UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ARLETA MONGUE,             )
       Plaintiff,          )
                         )
                         )
     v.                )     Civil No. 3:18-cv-30095-KAR
                         )
                         )
THE WHEATLEIGH CORPORATION,  )
L. LINFIELD SIMON, SUSAN SIMON,  )
and MARC WILHELM,         )
       Defendants.        )

MEMORANDUM AND ORDER ON
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
(Dkt No. 75)

ROBERTSON, U.S.M.J.

**I.    Introduction**

       Plaintiff Arleta Mongue ("Plaintiff") is a former employee of the defendant The

Wheatleigh Corporation ("Wheatleigh"), which was owned and operated by the remaining

defendants L. Linfield Simon, Susan Simon, and Marc Wilhelm (collectively, "Defendants").

Plaintiff alleges in her amended complaint that Defendants violated the Fair Labor Standards Act

("FLSA"), 29 U.S.C. § 201 et seq., by failing to pay her an overtime premium, paying her less

than the federal minimum wage, not providing proper notice before utilizing a tip credit, and

operating an illegal tip pool.  Plaintiff also states state law claims against these Defendants under

Massachusetts wage laws.  Specifically, Plaintiff claims that Defendants violated the

Massachusetts Fair Minimum Wage Act, Mass. Gen. Laws ch. 151, §§ 1, 7, by paying Plaintiff

the service rate when she should have received full minimum wage due to Defendants' unlawful

distribution of its tip pools, the un-tipped tasks to which Plaintiff was assigned, and Defendants'

failure to provide proper written notice before utilizing the service rate; the Massachusetts Tips

Act, Mass. Gen. Laws ch. 149, § 152A, by unlawfully distributing wages from the tip pool to

non-wait staff employees and supervisors; and the Massachusetts Wage Act, Mass. Gen. Laws

ch. 149, §§ 148, 150, by failing to timely pay wages.  Before the court is Plaintiff's Motion for

Class Certification (Dkt. No. 75) on her state law claims only.  The parties have consented to this

court's jurisdiction (Dkt. No. 14).  *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.  For the following

reasons, Plaintiff's motion for class certification is GRANTED.[1]

## II.     DISCUSSION

### A. Supplemental Jurisdiction

Before considering whether the prerequisites of Rule 23 have been met, the court

addresses Defendants' argument that the court should decline the exercise of supplemental

jurisdiction.  Pursuant to 28 U.S.C. § 1367(a), "in any civil action of which the district courts

have original jurisdiction, the district courts shall have supplemental jurisdiction over all other

---

[1] Also pending are Plaintiff's Motion for Partial Summary Judgment (Dkt. No. 77) and
Defendants' Cross-Motion for Summary Judgment (Dkt. No. 83).  "As a general rule, the
question of whether a class will be certified should be resolved before the merits of an action are
decided." *Vander Luitgaren v. Sun Life Assur. Co. of Canada*, 966 F. Supp. 2d 59, 61 (D. Mass.
2012), *on reconsideration*, Civ. Action No. 09-11410-FDS, 2013 WL 4058916 (D. Mass. Aug. 9,
2013), *aff'd*. 765 F.3d 59 (1st Cir. 2014) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156,
177-78 (1974)).  This rule exists to eliminate one-way intervention, which is when "absent class
members may choose to remain in the class if the decision on the merits is favorable to them, but
may elect to opt out of the class if the decision on the merits is unfavorable." *Id*. (citing *Ahne v.
Allis–Chalmers Corp.*, 102 F.R.D. 147, 148–50 (E.D. Wis. 1984)).  The First Circuit has noted
that deciding a plaintiff's motion for summary judgment before issuing a class certification
ruling "raises serious questions." *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 299
n.7 (1st Cir. 2000).  While ruling on Defendants' cross-motion for summary judgment would not
violate the rule against one-way intervention, *see, e.g., Charlessaint v. Persian Acceptance
Corp.*, 110 F. Supp. 3d 303, 310 (D. Mass. 2015), this court will defer ruling on the parties'
cross-motions for summary judgment until after notice has been issued to the class and the opt-
out period has passed.

claims that are so related to claims in the action within such general jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). Nevertheless, pursuant to § 1367(c), a court may decline to exercise supplemental jurisdiction over the state law claims if: "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c). *See also MOCA Sys., Inc. v. Bernier*, Civ. Action No. 13-10738-LTS, 2013 WL 6017295, at *1 (D. Mass. Nov. 12, 2013). In making the determination whether to exercise supplemental jurisdiction, the court must examine the totality of the circumstances and consider issues of comity, economy, convenience, and fairness. *See Curtis v. GreenPoint Mortg. Funding, Inc.*, 661 F. Supp. 2d 65, 67, 69 (D. Mass. 2009). "'[I]f there is some basis for original jurisdiction, the default assumption is that the court will exercise supplemental jurisdiction over all related claims." *MOCA Sys., Inc.*, 2013 WL 6017295, at *1 (quoting *Pacheco v. St. Luke's Emergency Assocs., P.C.*, 879 F. Supp. 2d 136, 143 (D. Mass. 2012)).

Defendants rely primarily on the asserted predominance of state law claims to convince the court to decline the exercise of supplemental jurisdiction. Defendants note that Plaintiff has put the number of proposed class members at 92 (a figure they dispute), which, with each class member having three state law claims, means that the court would be adjudicating a total of 276 Massachusetts wage claims, as compared to Plaintiff's three individual FLSA claims. Defendants rely on one circuit court decision and one district court decision to support the

argument that this quantitative difference should lead the court to decline to exercise supplemental jurisdiction.[2]

In *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301 (3d Cir. 2003), the Third Circuit held that the district court had abused its discretion in exercising supplemental jurisdiction over the plaintiffs' state law minimum wage and overtime claims because those claims substantially predominated over their FLSA claims within the meaning of 28 U.S.C. § 1367(c). *De Asencio*, 342 F.3d 312. As directed by the Supreme Court decision in *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966), the Third Circuit focused on whether state issues predominated "'in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought.'" *De*

---

[2] Defendants also include a *see also* citation to two other district court cases, *Burkhart-Deal v. Citifinancial Inc.*, No. 7-1747, 2008 WL 2357735 (W.D. Pa. June 5, 2008), and *Ellis v. Edward D. Jones Co., L.P.*, 527 F. Supp. 2d 439 (W.D. Pa. 2007), and provide a parenthetical from *Burkart-Deal* regarding that court's finding that "the inherent incompatibility of Plaintiff's FLSA claims and state law claims … require dismissal of the state law claims." *Id.*, 2008 WL 2357735, at *2. Defendants do not develop an inherent incompatibility argument, however. Moreover, the Third Circuit, of which the Western District of Pennsylvania is a part, has since addressed and rejected "the concept of inherent incompatibility … in the context of dual-filed FLSA opt-in and state law opt-out class actions where the federal court was asked to exercise supplemental jurisdiction over state law claims that paralleled the claim under the FLSA." *Knepper v. Rite Aid Corp.*, 675 F.3d 249, 258 (3d Cir. 2012). In doing so, the court noted that "[t]he concept of inherent incompatibility has not fared well at the appellate level," with "[f]our courts of appeals hav[ing] rejected its application to dual-filed FLSA and class actions." *See id.* (citing *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 247–49 (2d Cir. 2011) ("[W]e agree with the Seventh Circuit that ... 'the "conflict" between the opt-in procedure under the FLSA and the opt-out procedure under Rule 23 is not a proper reason to decline jurisdiction.'"); *Ervin v. OS Rest. Servs., Inc.*, 632 F.3d 971, 976–79 (7th Cir. 2011) ("There is ample evidence that a combined action is consistent with the regime Congress has established in the FLSA."); *Wang v. Chinese Daily News*, 623 F.3d 743, 760–61 (9th Cir. 2010), *vacated on other grounds*, 132 S. Ct. 74 ("We follow *Lindsay* in concluding that it was within the district court's discretion to exercise supplemental jurisdiction over the [state law] claim in this case."); *Lindsay v. Gov't Emps. Ins. Co.*, 448 F.3d 416, 424 (D.C. Cir. 2006) ("While there is unquestionably a difference ... between opt-in and opt-out procedures, we doubt that a mere *procedural* difference can curtail section 1367's *jurisdictional* sweep.")). The First Circuit has not addressed the issue of inherent incompatibility, but courts in this district have certified hybrid actions. *See, e.g., Torrezani v. VIP Auto Detailing, Inc.*, 318 F.R.D. 548, 558 (D. Mass. 2017).

*Asencio*, 342 F.3d at 309 (quoting *Gibbs*, 383 U.S. at 726).  The court determined that "the scope of state issues may substantially predominate over the more straightforward federal scheme," where the state law did not create a right to compensation, but rather provided a statutory remedy when the employer breached a contractual obligation to pay wages.  Because there was no express contract between the defendant and its employees, the plaintiffs would have to establish the formation of an implied oral contract to prevail on their state law claims, an element not present in their FLSA claims.  *Id*. at 309-310.  Secondarily, the court noted that the "disparity in numbers" between the 29 U.S.C. § 216(b) opt-in class under federal law and the Rule 23 opt-out class under state law gave it "pause."  *Id*. at 310.  While notice was sent to 3,400 prospective FLSA class members, the opt-in class ultimately consisted of only 447 persons.  *Id*. at 304-05.  The Rule 23 state law opt-out class, on the other hand, consisted of approximately 4,100 persons.  *Id*. at 305.  The court noted that "[p]redomination under section 1367 generally goes to the type of claim, not the number of parties involved," but that the "the disparity in numbers of similarly situated plaintiffs may be so great that it becomes dispositive by transforming the action to a substantial degree, by causing the federal tail represented by a comparatively small number of plaintiffs to wag what is in substance a state dog."  *Id*. at 311.  In addition to predominance, the *De Asencio* court identified two "novel" and "complex" questions of state law, including the question of whether an action under the Pennsylvania Wage Payment & Collection Law could rest on an implied oral employment contract as advanced by the plaintiffs.  *Id*. at 311.

In *de la Cruz v. Gill Corn Farms, Inc.*, No. 03-CV-1133, 2005 WL 5419056, at *9 (N.D.N.Y. Jan. 25, 2005), another case involving claims under the FLSA and state wage law, the court declined to certify the state law claim as a class action, finding that the requirements of

Fed. R. Civ. P. 23(b) were not met.  In so holding, the court noted in dicta that, [e]ven if certification was proper … the Court would decline to exercise supplemental jurisdiction over a state Labor Law class claim." *Id*. at *7.  The court relied on *De Asencio* for the proposition that "the sheer numbers involved would cause this case to become predominated by state claims." *Id*. at 7.  The court did not quantify the number of individuals that would be in the proposed class other than to indicate that it would be over 40. *Id*. at *3.  By contrast, there were no members of the FLSA class except for two of the three named plaintiffs, despite the fact that 168 days had elapsed since preliminary certification of the FLSA class claims. *Id*. at *6, *7 n.5.

The First Circuit has not addressed the question of whether the larger size of a state law class alone can create a reason for a district court not to exercise supplemental jurisdiction on predominance grounds.  However, aside from the Third Circuit in *De Asencio*, other circuit courts to address the issue have rejected the argument.  First, in *Wang*, the Ninth Circuit held that, while the number of claimants and damages in the state law claim may have been higher, "[p]redomination under section 1367(c)(2) relates to the *type of claim* and here the state law claims essentially replicate the FLSA claims – they plainly do not predominate." *Id*., 623 F.3d at 743 (quoting *Lindsay*, 448 F.3d at 425 (emphasis added)).  The *Lindsay* court for its part did not opine on the correctness of the *De Asencio* court's conclusion that the "disparity in numbers of similarly situated plaintiffs may be so great that it becomes dispositive," 342 F.3d at 311, because, even if the view were correct, it did not apply to the case before it in which the two classes were "almost identical in size." *Lindsay*, 448 F.3d at 425 n.12.  In *Ervin*, the Seventh Circuit noted that "[a] simple disparity in numbers should not lead a court to the conclusion that a state claim 'substantially predominates' over the FLSA action, as section 1367(c) uses that phrase." *Id*., 632 F.3d at 980.  To the contrary, "[a]s long as the claims are similar between the

state plaintiffs and the federal action, it makes no real difference whether the numbers

vary." *Id*. The *Ervin* court, like the *Lindsay* court, took no position on "whether a state-law class

might ever so dwarf a federal FLSA action that supplemental jurisdiction becomes too thin a

reed on which the ferry the state claims into federal court." *Id*. However, the case before it, in

which the FLSA class numbered 30 participants and the state-law classes consisted of between

180 and 250 people, did not present enough of a disparity to affect the supplemental jurisdiction

analysis. *Id*. at 981. The court noted that "[i]n the majority of cases, it would undermine the

efficiency rationale of supplemental jurisdiction if two separate forums were required to

adjudicate precisely the same issues because there was a different number of plaintiffs

participating in each claim." *Id*. Finally, in *Shahriar*, the Second Circuit agreed with the

Seventh and Ninth circuits that "the fact that there are more class members in the state law class

action than those in the FLSA collective action 'should not lead a court to the conclusion that a

state claim "substantially predominates" over the FLSA action, as section 1367(c) uses that

phrase.'" *Id*., 659 F.3d at 246 (quoting *Ervin*, 632 F.3d at 980). In *Shahriar*, the FLSA

collective action consisted of 25 persons, while the state law class was 275. *Id*. at 242 and

n.5.

This court did locate four district court cases where courts declined to exercise

supplemental jurisdiction over state law class claims on predominance grounds where the

plaintiffs either did not seek to pursue their FLSA claims as collective actions or, if they did,

there were no opt-in plaintiffs. In *Kneipp v. Re-Vi Design*, 17-cv-857-slc, 2019 WL 1244903, at

*3 (W.D. Wis. Mar. 18, 2019), the court first noted that the plaintiff's FLSA claim did not

"essentially replicate" his state law class claims. Moreover, "the management and resolution of

the proposed state class action claims … particularly with respect to damages, most definitely

*would* predominate [plaintiff's] individual FLSA claim." *Id*. at *4. "The necessity of even relatively straightforward post-trial damages proceedings devoted entirely to the [state law] claims of 100 potential class members weighs heavily in favor of finding substantial predominance under § 1367(c)(2)." *Id*. This would result in the "vast majority of the court's time and resources" being devoted to the state law class claims. *Id*. The other courts similarly focused on the damages issues involved with class-wide litigation. In *Darden v. Southwest Arkansas Development, Inc.*, Case No. 4:16-cv-4023, 2016 WL 4132285, at *2 (W.D. Ark. Aug. 3, 2016), while the court agreed with the plaintiff that the substance of his state law class claims and individual FLSA claim were "almost identical," the state law class claims would nevertheless substantially predominate because it was "solely" those claims that would "interject into [the] case the need to consider liability and determine damages on a class-wide basis." *Id*. at *1. Similarly, in *Wicke v. L & C Insulation, Inc.*, No. 12-cv-638-wmc, 2013 WL 5276112, at *4 (W.D. Wis. Sept. 18, 2013), the court found that the "substance of plaintiffs' state law claims roughly track[ed] with their federal claims, [but] asserting those state law claims as class claims necessarily interject[ed] the class certification process and all the complexity that adjudicating a class action entails," which would lead to predominance. Finally, in *De La Riva v. Houlihan Smith & Co., Inc.*, 848 F. Supp. 2d 887, 891 (N.D. Ill. 2012), the court noted that there was not only a quantitative, but also a qualitative difference where the plaintiffs were seeking to pursue their state law claims as a class action but chose not to pursue their FLSA claims collectively. Under those circumstances, the plaintiffs' damages, should they prevail, would be established at trial, but the absent class members' damages would have to be determined in post-trial proceedings. Those proceedings would be devoted entirely to the state law claims, which the court found weighed heavily in the predominance analysis. *Id*. at 891. The *De La Riva* court

also found remand appropriate on the independent ground that the case "rais[ed] novel or complex issue[s] of State law.

The *Kneipp, De La Riva*, and *Wicke* courts are all part of the Seventh Circuit, but they each distinguished *Ervin* in declining to exercise supplemental jurisdiction over the state law class claims before them.  Unlike *Ervin*, where there was a collective FLSA action along with the Rule 23 state law class action, in *Kneipp, De La Riva*, and *Wicke*, there were only the individual FLSA claims.  Those courts hung their hats on *Ervin*'s statement that "in the majority of cases" a disparity between the number of FLSA opt-in plaintiffs and the number of state law class members would not establish substantial predominance.  *Id*., 848 F. Supp. 2d at 890.  "The necessary implication is that a disparity *could* establish substantial predominance in a *minority* of cases."  *De La Riva*, 848 F. Supp. 2d at 890.  As the *De La Riva* court reasoned, however small that minority might be, it "plainly encompass[ed]" a case where there was no FLSA collective action.  *Id*.  *Kneipp* had the additional distinction that the plaintiff's individual FLSA claim did not "substantially replicate" his state law class claims.  *Id*., 2019 WL 1244903, at *3.

The second reason Defendants advance for declining the exercise of supplemental jurisdiction is that the claim raises a novel issue of State law.  Defendants argue that the novel question of state law is whether the intent of the written notice requirement is achieved where (1) a plaintiff had actual notice of her compensation structure prior to being paid minimum wage; (2) the workplace had a properly conspicuous wage and hour poster that informed its tipped employees that the service rate and tip credit was required by law to meet or exceed the minimum wage; and (3) there is no single week in which the plaintiff was paid less than the minimum wage.  Plaintiff's counsel conceded at oral argument that the question of whether the posting of the Massachusetts Attorney General's Wage & Hour Laws poster meets the

employer's notice requirement is a question of first impression in Massachusetts.  The First

Circuit has cautioned that "'[n]eedless decisions of state law should be avoided both as a matter

of comity and to promote justice between the parties, by procuring for them a surer-footed

reading of applicable law.'"  *Curtis*, 661 F. Supp. 2d at 68 (quoting *Camelio v. American Fed'n*,

137 F.3d 666, 672 (1st Cir. 1998)).

While this is a close case, the court will exercise supplemental jurisdiction over

Plaintiff's state law claims.  Most of Plaintiff's state law class claims mirror her federal

claims.  Plaintiff brings minimum wage and tip violation claims under both federal and state

law.  In both cases, Plaintiffs argue that Defendants were not entitled to pay the service rate and

take a tip credit because they cannot show that they satisfied mandated notice requirements or

that they operated a valid tip pool.  Although not identical, the notification requirements are

similar under the FLSA and Massachusetts law.  For example, under Massachusetts law, the

notice must be in writing.  However, the evidence regarding what notice was provided will be the

same.  Regarding the alleged tip pool violations, there is a bit more deviation.  Insofar as the

validity of the tip pool turns on who shared in the pool, the evidence will be the same even

though the definitions of who may share in the tip pool vary slightly under the FLSA and

Massachusetts law.  Plaintiff additionally alleges that Defendants violated both the FLSA and

Massachusetts law by paying the service rate and claiming a tip credit when Plaintiff and other

servers were performing non-tipped work.  Plaintiff brings one claim under state law that does

not have a federal counterpart: Plaintiff claims that Defendants violated Mass. Gen. Laws ch.

149, § 148 by not disbursing cash tips within seven days of the termination of the pay period

during which they were earned.  Despite these differences, the state claims are very similar to the

federal claims and the difference in numbers is not a decisive factor according to *Wang*, *Ervin*,

and *Shahriar*, the reasoning of which the court finds persuasive   Thus, the court will not decline jurisdiction on predominance grounds.  Moreover, while the issue of whether the posting of the Massachusetts Attorney General's Wage & Hour Law poster satisfies the written notice requirement under Massachusetts law is novel, it is not particularly complex, and issues of comity are not the only concern.  The court must also consider questions of judicial economy and fairness.  These latter concerns weigh in favor of retaining jurisdiction, insofar as it would be more efficient to decide the issues in one proceeding rather than two and fairer to allow Plaintiff to proceed in federal court where this case has been pending for over three years, since June 2018.  The court further notes that this is one of four wage and hour cases brought against the same Defendants, and the other three cases remain pending before this court.  These cases were consolidated for purposes of discovery.  The court recently ruled on summary judgment motions in these cases and has gained general familiarity with Wheatleigh and its operations.

### B.  Class Certification

A class may be certified if a plaintiff shows that the class meets the Fed. R. Civ. P. 23(a) and (b)(3) requirements.  Pursuant to Rule 23(a), a plaintiff must show: (1) numerosity: "the class is so numerous that joinder of all members is impracticable;" (2) commonality: "there are questions of law or fact common to the class;" (3) typicality: "the claims or defenses of the representative parties are typical of the claims or defenses of the class;" and (4) adequacy: "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).  The additional requirements imposed by Rule 23(b)(3) are: (1) predominance: "questions of law or fact common to class members predominate over any questions affecting only individual members;" and (2) superiority: "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Implicit

in Rule 23 is the additional requirement that plaintiffs demonstrate by a preponderance of the

evidence that the class is 'currently and readily ascertainable based on objective criteria.'" *In re*

*Ranbaxy Generic Drug Application Antitrust Litig.*, 338 F.R.D. 294, 300 (D. Mass. 2021)

(quoting *In re Nexium Antitrust Litig.*, 777 F.3d 9, 19 (1st Cir. 2015)).

      1.  Class Period

      Before embarking on the Rule 23 analysis, the court addresses the issue of the period for

which class damages may be claimed.  Plaintiff's proposed class definition is: "All individuals

who worked as wait staff employees, service employees, or service bartenders for Defendants

from December 1, 2016, to March 1, 2020, and were paid a Service Rate."[3]  Defendants argue

that the class period is overbroad and that it should be limited to the period of June 26, 2017, to

March 1, 2020, because Plaintiff did not file her class action complaint until June 26, 2020.  The

statute of limitations for each of Plaintiff's state law claims is three years.  *See* Mass. Gen. Laws

ch. 149, § 150; Mass. Gen. Laws ch. 151, § 20A.

      "[A]s a matter of federal law, the filing of a class action will toll the statute of limitations

for named and unnamed members of the class, and the statute will [not] resume running [until]

class certification is denied."  *Fernandez v. Chardon*, 681 F.2d 42, 48 (1st Cir. 1982) (citing

*American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 561 (1974)).  However, the rule of

*American Pipe* allows tolling within the federal court system in federal question class actions

only.  *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1025 (9th Cir. 2008).  The rule is not

binding on state law claims, which are governed by state law statutes of limitation and

state law tolling principles.  *See id*.

---

[3] The December 1, 2016, date is when Defendants first started claiming a tip credit and utilizing a tip pool.

The Supreme Judicial Court ("SJC") has not spoken directly on the issue of whether the filing of a class action complaint tolls the statute of limitations for all putative members of the class. *Mass. Elec. Co. v. Mass. Comm'n Against Discrimination*, 375 N.E.2d 1192, 1197 (Mass. 1978) (citing *American Pipe*, 414 U.S. at 552-556, 560-561) ("We need not decide at this time whether the statute of limitations is tolled for them by the initial filing of the class action."). However, the Massachusetts Appeals Court has applied the rule of *American Pipe*. *DiCerbo v. Comm'r of Dept. of Emp't & Training*, 763 N.E.2d 566, 572 n.13 (Mass. App. Ct. 2002) (citing *American Pipe*, 414 U.S. at 554) ("[A]s to putative class members who wish to intervene, the statute of limitations is tolled upon the filing of the complaint."). This court finds the *DiCerbo* decision persuasive in indicating that the SJC would adopt the rule in *American Pipe*. *Philibotte v. Nisource Corp. Servs. Co.*, 793 F.3d 159, 165 (1st Cir. 2015) (quoting *Barton v. Clancy*, 632 F.3d 9, 17 (1st Cir. 2011) (noting that if the state's highest court has not spoken directly on the issue, the court must predict how that court likely would decide the issue); *Hamm v. Latessa*, 72 F.3d 947, 955 n.12 (1st Cir. 1995) ("Intermediate appellate court decisions 'are trustworthy data for ascertaining state law,' *Losacco v. F.D. Rich Constr. Co.*, 992 F.2d 382, 384 (1st Cir.), *cert. denied*, 510 U.S. 923, 114 S. Ct. 324, 126 L.Ed.2d 270 (1993), and, in the absence of other telltales indicating that the state's highest tribunal would have ruled otherwise, we believe it is prudent to accept the appeals court's interpretation as authoritative.").

Accordingly, the court concludes that the statute of limitations was tolled by Plaintiff's filing of the class action complaint on June 26, 2020, and the correct period for which class damages may be recovered is June 26, 2017, through March 1, 2020. That said, for each of Plaintiff's claims, the statute of limitations is tolled "from the date that the employee or a similarly situated employee files a complaint with the attorney general alleging a violation …

until the date that the attorney general issues a letter authorizing a private right of action ….”
*See* Mass. Gen. Laws ch. 149, § 150; Mass. Gen. Laws ch. 151, § 20A.  Plaintiff included her
right to sue letter, which was issued on June 12, 2018, as an attachment to her complaint, but she
did not specify when she filed her complaint with the attorney general.  Therefore, the court
cannot determine the appropriate period of time for which the statute of limitations was tolled.
To the extent that Plaintiff wishes to enlarge the class definition to include this additional time,
Plaintiff is directed to file a copy of the complaint she filed with the Attorney General within 14
days.

### 2.  Fed. R. Civ. P. 23(a)

The court now turns to the application of Fed. R.  Civ. P. 23(a).  “Rule 23(a) ensures that
the named plaintiffs are appropriate representatives of the class whose claims they wish to
litigate.  The Rule’s four requirements – numerosity, commonality, typicality, and adequate
representation – ‘effectively “limit the class claims to those fairly encompassed by the named
plaintiff’s claims.”’” *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011) (quoting *Gen.
Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982)).  “[C]ertification is proper only if ‘the trial
court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been
satisfied.’” *Id*. at 350-51 (quoting *Falcon*, 457 U.S. at 161).

### (i)  Numerosity

Rule 23(a)(1) requires that the class be “so numerous that joinder of all members is
impracticable.”  Plaintiffs have represented that the class contains 92 servers.  This figure would
be sufficient to satisfy numerosity.  *García-Rubiera v. Calderón*, 570 F.3d 443, 460 (1st Cir.
2009) (quoting *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001) (“‘[G]enerally if the

named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met.'").

Defendants challenge Plaintiff's figure on a number of grounds. Defendants argue that Plaintiff's figure is flawed because Plaintiff counted class members for a class commencing December 1, 2016, and the class does not actually start until June 26, 2017. Defendants note that it is impossible to determine how this shortened period reduces Plaintiff's number because Plaintiff did not identify any class members with specificity. The court agrees with Defendants that the class period does not commence until June 26, 2017 (subject to the addition of some period of time after which Plaintiff filed her complaint with the attorney general and before she was issued her right to sue letter). However, the court fails to see how shortening the class period by seven months (at most) would reduce the number of class members below 40. Defendants further complain that it is impossible to tell if Plaintiff's number includes prep-cooks, shift captains, and back waiters, individuals whom she alleges were illegally participating in the tip pool. The court disagrees with Defendants. Plaintiff identifies the class as being composed of 92 "Servers," with "Servers" being identified in her complaint as those who "served food and beverages directly to customers and did not have managerial responsibility" (Dkt. No. 61 at 3). Finally, Defendants cite to *Thiebes v. Wal-Mart Stores, Inc.*, No. CIV. 98-802-KI, 2002 WL 479840 (D. Or. Jan. 9, 2002), to argue that in determining numerosity this court should not consider Plaintiff's figure of 92, but rather the zero individuals who have opted into the FLSA collective action, as did the court in *Thiebes*. *Id*. at *3 ("Notwithstanding plaintiffs' argument that I should use a figure in excess of 15,000 individuals to apply this standard, I believe the appropriate figure on which to focus is the 425 individuals who decided to opt into the collective action. The fact that such a small percentage of employees opted-in is

telling … and cautions against a finding that joinder is impracticable….").   The court rejects Defendants' suggestion.   *Theibes* is not controlling law and, even in the Ninth Circuit of which the *Theibes* court is a part, it represents a minority holding; the "prevailing trend [is] that a Rule 23 class numerosity determination is a separate inquiry not bound by the number of opt-in plaintiffs in a related FLSA collective action."   *Peterson v. Alaska Commc'ns Sys. Grp., Inc.*, 328 F.R.D. 255, 269 (D. Alaska 2018).   Thus, the court finds the numerosity requirement to be satisfied.

(ii)    Commonality

"Rule 23(a)(2) requires the identification of an issue that is by its nature "capable of classwide resolution -- which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one §.'"   *Ouadani v. Dynamex Operations E., LLC*, 405 F. Supp. 3d 149, 161 (D. Mass. 2019) (quoting *Dukes*, 564 U.S. at 350). The class must not only raise common questions, but those questions must also generate common answers.   *Dukes*, 564 U.S. at 350.   However, the plaintiff need only identify a single common issue for the purposes of Rule 23(a)(2).   *Id*. at 359.

Plaintiff identifies a multiplicity of what she contends are common questions of law and fact, including: whether Defendants provided Servers with written notice of the provisions of Mass. Gen. Laws ch. 151, § 7, paragraph three; whether Defendants paid Servers a Service Rate that is less than the Basic Minimum Wage; whether Defendants took a Tip Credit; whether Defendants operated a valid tip pool; whether Servers are engaged in serving food and beverages; whether tips were distributed by Defendants to Defendants/managers/supervisors or anyone who had any managerial responsibilities; whether tips were distributed to Servers in proportion to the service provided; and the form and amount of monetary relief for Servers.

Plaintiff also points out that wage and hour class actions like this one have been certified by courts throughout this District. *Dvornikov v. Landry's Inc.*, No. 15-cv-13286-ADB, 2017 WL 1217110, at *8 (D. Mass. Mar. 31, 2017) (finding commonality where "Defendants employed a uniform, tip sharing system … that applied to all servers … during the relevant time period); *Garcia v. E.J. Amusements of N.H., Inc.*, 98 F. Supp. 3d 277, 286 (D. Mass. 2015) (noting that "wage claims involving system-wide practices or policies are appropriate for class treatment because establishing liability for one employee necessarily establishes liability for the entire class," and finding the commonality requirement met); *George v. Nat'l Water Main Cleaning Co.*, 286 F.R.D. 168, 176 (D. Mass. 2012) (finding the commonality requirement to be satisfied in a wage and hour case); *Overka v. Am. Airlines, Inc.*, 265 F.R.D. 14, 18 (D. Mass. 2010) ("Commonality is satisfied where the lawsuit challenges a systemwide practice or policy that affects all of the putative class members.").

Defendants counter that Plaintiff's list of common questions of law and fact are entirely superficial and that while each question must be answered for each class member, there is no one answer applicable to every class member that "is apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 351. According to Defendants, the only arguably common question is whether Defendants provided Servers with written notice of the provisions of Mass. Gen. Laws ch. 151, § 7, paragraph three, but that even that question fails because notice is properly determined on an individual basis. To support this proposition, Defendants cite to *Ring v. Sokolove*, Civil Action No. 12-12240-RGS, 2014 WL 1117859, at * (D. Mass. Mar. 18, 2014), in which the court denied summary judgment in favor of the defendant employers on an individual FLSA claim that they had failed to adequately inform the plaintiff of the tip provisions of 29 U.S.C. § 203(m) because there was a conflict between the parties over the actual verbal notice

given.  Finally, Defendants argue that an unspecified number of the purported class members were international J-1 interns and trainees and that before hosting any international J-1 intern or trainee, Wheatleigh was required to prepare a formal training plan outlined on a form DS-7002, on which Wheatleigh would indicate the applicant's compensation pay rate and pay basis (e.g. "$5.00 per hour plus tips – or we guarantee $11.00 minimum wage by law") (Dkt. No. 86-1 at 7).

The court finds that Plaintiff has satisfied her burden with respect to commonality. Plaintiff has identified common questions of fact and law, which are capable of generating common answers.  These include primarily whether Defendants provided Servers with adequate written notice of the provisions of Mass. Gen. Laws ch. 151, § 7, paragraph three and whether Defendants operated a valid tip pool.  Defendants' arguments to the contrary are unavailing. *Sokolove* is inapposite; the fact that individual inquiry might be required to determine if Defendants complied with the FLSA notification requirements with respect to Plaintiff's individual FLSA claim has no bearing on whether commonality exists with respect to Plaintiff's class claim that Defendants failed to comply with Massachusetts written notice requirement. Moreover, regarding the J-1 interns or trainees, it is not clear from the affidavit of Marc Wilhelm whether the international J-1 intern or trainee was given the form DS-7002, nor have Defendants shown that, even if they were given the form, it satisfies the requirements of Mass. Gen. Laws ch. 151, § 7, paragraph three and 454 C.M.R. 27.03(2)(b)(1).

(iii)    Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Typicality is met when the representative's claims "'arise[ ] from the same event or practice or course of conduct that gives rise to the claims of other class members, and … are based on the same legal theory.'"  *Garcia-Rubiera v. Calderon*,

570 F.3d 443, 460 (1st Cir. 2009) (alterations in original) (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996)).  "The 'plaintiff[ ] need not show substantial identity between [her] claims and those of absent class members, but need only show that [her] claims arise from the same course of conduct that gave rise to the claims of the absent members.'"  *McLaughlin v. Liberty Mut. Ins. Co.*, 224 F.R.D. 304, 310 (D. Mass. 2004) (quoting *Priest v. Zayre Corp.,* 118 F.R.D. 552, 555 (D. Mass. 1988)).

Plaintiff argues that she satisfies the typicality requirement of Fed. R. Civ. P. 23(a)(3) because, just like other members of the proposed class: (1) she was a server/waitstaff employee; (2) she was paid a Service Rate; (3) she did not receive written notice of the provisions of Mass. Gen. Laws ch. 151, § 7, paragraph three; and 4) she participated in Defendants' illegal tip pool. Plaintiff also notes that she asserts the same claims and relies on the same legal theories as every other member of the proposed class.  Finally, Plaintiff points to other wage and hour cases in which courts have found the typicality requirement to be satisfied.  *Dvornikov*, 2017 WL 1217110, at *9; *McLaughlin*, 224 F.R.D. at 310.  Defendant does not make any argument against a finding of typicality.

The court finds that Plaintiff has met Rule 23's typicality requirement.  The injuries Plaintiff complains of arose from the course of conduct by Defendants affecting other server/waitstaff employees.  In addition, the claims of Plaintiff and the proposed class are based on the same legal theories.

(iv)     Adequacy

Pursuant to Fed. R. Civ. P. 23(a)(4), the proposed class representative must "fairly and adequately protect the interests of the class."  "The element of adequacy is satisfied if 1) there is no conflict between the interest of the named plaintiff[ ] and the class members and 2) counsel

chosen by the named plaintiff[ ] [is] qualified and able to litigate the claims vigorously." *In re Ranbaxy Generic Drug Application Antitrust Litig.*, 338 F.R.D. at 302 (citing *S. States Police Benevolent Ass'n v. First Choice Armor & Equip., Inc.*, 241 F.R.D. 85, 88 (D. Mass. 2007)).

Plaintiff argues that she is an adequate representative because she has no conflicts of interest with the proposed members of the class; to the contrary, their interests in recovering minimum wages and tips are perfectly aligned. Further, Plaintiff argues that her lawyers are qualified and experienced in class litigation.

Defendants do not argue that Plaintiff has any conflicts with the proposed members of the class or that her lawyers are in any way deficient. Rather, Defendants argue that Plaintiff has not affirmatively demonstrated that she adequately represents the interests of the proposed class based on the inference that Plaintiff could not find any Wheatleigh employees to join her suit.

The court finds that Plaintiff has the better of the argument and has established adequacy of representation. The court can see no conflict between Plaintiff and other Wheatleigh Servers, who would have the same interest in recovering unpaid wages from Defendants. Plaintiff has also shown her lawyers to be well-qualified and capable of litigating this matter. Defendants have offered no authority for the proposition that Plaintiff is an inadequate representative because no other Servers chose to opt-in to a collective action. Plaintiff never moved for conditional certification of a collective action under the FLSA, and the court does not know whether employees would have chosen to opt-in had she done so. Moreover, to the extent that any Server wishes not to participate in the class action, he or she can choose to opt-out pursuant to Fed. R. Civ. P. 23(c)(2)(B).

3.   Fed. R. Civ. P. 23(b)

Rule 23(b)(3) of the Federal Rules of Civil Procedure provides as follows: "A class action may be maintained if ... the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

(i)      Predominance

Pursuant to Rule 23(b)(3), common issues must predominate over individual issues. *In re Asacol Antitrust Litig.*, 907 F.3d 42, 51 (1st Cir. 2018) (citing *Amgen, Inc. v. Conn. Ret. Plans. & Tr. Funds*, 568 U.S. 455, 469 (2013)).  "The 'predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)).  This requirement is similar to Rule 23(a)'s commonality inquiry, but the predominance requirement is "far more demanding." *Amchem Prods., Inc.*, 521 U.S. at 623–24. The inquiry requires the court to examine "the relation between common and individual questions in a case." *Id.*  "An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'" *Id*. (quoting 2 W. Rubenstein, Newberg on Class Actions § 4:50, pp. 196–197 (5th ed. 2012)).  "When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual

class members.'"  *Id*. at 453-54 (quoting 7AA C. Wright, A. Miller, & M. Kane, Federal Practice

and Procedure § 1778, pp. 123–124 (3d ed. 2005)).  On the other hand, if individualized

questions appear to outweigh common questions, certification is not appropriate.  *See In re*

*Nexium Antitrust Litig.*, 777 F.3d at 21.

Plaintiff contends that common issues predominate because "all of Plaintiff's claims

revolve around common themes and questions, which is the hallmark of finding predominance"

(Dkt. No. 76 at 15).  Plaintiff identifies the central claims and issues as (1) whether Defendants

provided Servers written notice of the provisions of Mass. Gen. Laws ch. 151, § 7, paragraph

three, and, if not, whether Defendants paid Servers a rate lower than the minimum wage in effect

at the time; and (2) whether Defendants operated an illegal tip pool by distributing tips to any

person who was not a wait staff employee, service employee, or service bartender, by

distributing tips to individuals who performed any managerial responsibilities, or by not

distributing tips in proportion to the services provided.

For support, Plaintiff relies on a number of other wage and hour cases in which courts

have found predominance to be satisfied.  For example, Plaintiff cites to *Dvornikov*, 2017 WL

1217110, at *9 (quoting *Garcia*, 98F. Supp. 3d at 286), in which the court noted that "'[w]age

claims involving system-wide practices or polices are appropriate for class treatment because

establishing liability for one employee necessarily establishes liability for the entire class.'"  The

*Dvornikov* court found predominance to be satisfied in the case before it where the bulk of the

evidence for trial would be common to all members of the putative class.  *Id*.  *See also Cormier*

*v. Landry's Seafood House-N. C., Inc.*, Civil Case No. 13-11822-NMG, 2015 WL 12732420, at

*4 (D. Mass. Feb. 23, 2015) (finding predominance satisfied where there was a question of law

common to all servers as to whether the tip pooling arrangement was illegal under the

Massachusetts Tips Act and Minimum Wage Act, despite any need for individualized inquiries into damages); *Raghai v. BH Normandy Owner LLC*, No. 10-3992, 2012 WL 13194935, at *4 (Mass. Super. May 30, 2012) (same where the case concerned a uniform policy implemented by the defendants and liability would turn on whether food runners were or were not wait staff); *Foley v. Speakeasy Grp., Inc.*, No. 09-1740-H, 2010 WL 11672788, at *1 (Mass. Super. Oct. 15, 2010) (same where the common question that would determine liability was whether wait staff paid over a portion of their tips to individuals who did not meet the definition of "wait staff employees" in violation of the Massachusetts Tips Act and Minimum Wage Act).

Defendants argue that predominance is absent because individual questions abound in comparison to common ones. Specifically, Defendants maintain that determining whether Wheatleigh's tip pool was valid "would require an individualized analysis as to the job duties and responsibilities of every member of the class to answer: (i) 'Whether tips were distributed by Defendants to Defendants/managers/supervisors or anyone who had managerial responsibilities;' and (ii) 'Whether tips were distributed by Defendants to any person who is not a wait staff employee, service employee, or service bartender'" (Dkt. No. 86 at 14-15). Additionally, once those questions are answered, there would be individual inquiry needed to determine whether tips were distributed in proportion to the service provided.

The court finds predominance to be satisfied. The same evidence will suffice to establish what written notice regarding tips was or was not given to the putative class members for which Defendants are relying largely on the posting of the Massachusetts Attorney General's Wage & Hour Laws poster. The same is true about whether the tip pool in which the putative class members were participating was valid or not. The court disagrees that individual inquiry will be needed for every member of the class to determine whether anyone with managerial

responsibilities or any person who was not a wait staff employee, service employee, or service bartender received tips from the pool, or whether the manner in which Defendants distributed the tip pool was or was not in proportion to services provided.  If someone with managerial responsibility participated in the tip pool, it was invalid for all putative class members.  If someone who was not a wait staff employee, service employee, or service bartender participated in the tip pool, it was invalid for all putative class members.  If the formula Defendants used to distribute tips from the pool was not in proportion to the services provided, it was invalid for all putative class members.  Therefore, the predominance requirement of Fed. R. Civ. P. 23(b) is met.

(ii)    Superiority

The superiority inquiry addresses whether the proposed class action will be "superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  "Class adjudication is superior when it will 'achieve economies of time, effort, and expense' as well as promoting uniformity among class members 'without sacrificing procedural fairness or bringing about other undesirable results.'"  *Mooney v. Domino's Pizza, Inc.*, Civil Action No. 1:14-cv-13723- IT, 2016 WL 4576996, at *9 (D. Mass. Sept. 1, 2016) (quoting *Amchem Prods., Inc.*, 521 U.S. at 615).  The Federal Rules direct the court to consider the following factors: "(A) interest in 'individually controlling the prosecution or defense of separate actions;' (B) 'the extent and nature' of litigation involving class members arising out of the same controversy; (C) whether it is desirable or undesirable to concentrate the litigation in this forum; and (D) the 'likely difficulties in managing a class action.'"  *In re AVEO Pharm., Inc. Sec. Litig.*, Civ. Action No. 13-11157, 2017 WL 5484672, at *7 (quoting Fed. R. Civ. P. 23(b)(3)).  In considering these factors, the court considers the First Circuit's admonition that "[t]he class

certification prerequisites should be construed in light of the underlying objectives of class actions." *Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 41 (1st Cir. 2003).

Plaintiff argues that this case satisfies each of the four factors enumerated in the rule: (1) the interests of the putative class members would not be served by individually controlling the prosecution of the action because most of them lack the resources to pursue the case other than on a contingency basis or via participation in a class action; (2) Plaintiff is unaware of any other litigation against the Defendants raising the precise issues raised in this case; (3) the litigation should be concentrated in this forum because both Plaintiff and Defendants are residents of Massachusetts and Wheatleigh's principal place of business is in Massachusetts; and (4) the case does not present any manageability issues.   Plaintiff additionally argues that the parties would benefit from one uniform ruling as to Defendants' liability, that it would be grossly inefficient to require each of the 92 putative class members to pursue his or her claims individually, and it would be unnecessarily costly for the individual class members to do so.

Defendants counter that superiority has not been established because it would be easy to identify, locate, and join the putative class members.  In addition, the putative class members' claims would not be so small that they could not be expected to mount individual actions, particularly where treble damages, attorney's fees, and interest are available.  Finally, Defendants argue that Plaintiff must show that a Rule 23 class action is superior to an opt-in collective action under Section 216(b) of the FLSA.

The court finds that Plaintiff has cleared the final Rule 23 hurdle for class certification. The court does not anticipate any significant management issues and is aware of no other pending litigation on the same issues.  Moreover, "a class action is particularly superior where class treatment can vindicate the claims of 'groups of people whose individual claims would be

too small to warrant litigation.'"  *Henderson v. Bank of N.Y. Mellon*, 332 F. Supp. 3d 419, 429-

430 (D. Mass. 2018) (quoting *Smilow*, 323 F.3d at 41).  The court disagrees with Defendants'

assessment that the individual claims of the putative class members would not be too small.

Most, if not all, of the putative class members likely lack the resources to pay legal counsel on an

hourly basis, and it is not at all clear that each of the 92 putative class members could find

counsel to take on his or her case on a contingency.  Finally, Defendants offer no authority for

the proposition that Plaintiff must demonstrate that a Rule 23 class action is superior to an opt-in

collective action under Section 216(b) of the FLSA.  To the contrary, "the FLSA action and state

law remedies are entirely separate rights that may be pursued by the plaintiffs.  *McLaughlin*, 224

F.R.D. at 308 (citing *O'Brien v. Encotech Constr. Servs., Inc.*, 203 F.R.D. 346, 352 (N.D. Ill.

2001)).  Other courts in this district have refused to find that a class action is not a superior

means of adjudicating a controversy because of the unwillingness of putative class members to

join into FLSA litigation.  *See Wise v. Patriot Resorts Corp.*, C.A. No. 04-30091-MAP, 2006

WL 6110885, at *3 (D. Mass. Feb. 15, 2006); *McLaughlin*, 224 F.R.D. at 312.

      4.  Ascertainability

In addition to meeting the requirements of Fed. R. Civ. P. 23, the First Circuit has held

that a proposed class must be sufficiently ascertainable.  *In re Nexium Antitrust Litig.*, 777 F.3d

at 19.  "To satisfy the ascertainability requirement, [Defendants] 'must show by a preponderance

of the evidence, that the class is currently and readily ascertainable based on objective criteria.'"

*In re Ranbaxy Generic Drug Application Antitrust Litig.*, 338 F.R.D. at 307 (quoting *In re

Nexium Antitrust Litig.*, 777 F.3d at 19)).  Plaintiff need not identify every class member at the

certification stage, "but the class must be sufficiently ascertainable to permit a court to decide

and declare who will receive notice, who will share in any recovery, and who will be bound by

the judgment." *Id.* (D. Mass. 2012) (quoting *Schonton v. MPA Granada Highlands LLC*, No. 16-cv-12151-DJC, 2019 WL 1455197, at *3 (D. Mass. Apr. 2, 2019)).

Plaintiff submits that the class is readily ascertainable because class members can be identified based on objective criteria consisting of Defendants' own records.  While Defendants acknowledge that ascertainability is required and make a conclusory claim that it is not met, they do not develop an argument on the issue.

The court finds that there is no insurmountable difficulty with ascertainability here. Plaintiffs will be able to use Defendants' records, including Defendants' Tip Distribution Sheets and ADP Payroll Records to identify the members of the class.  Accordingly, the class is sufficiently ascertainable.

### III.    ORDER

For the above-stated reasons, Plaintiff's motion for class certification (Dkt. No. 75) is GRANTED.  The court certifies the following class:

> All individuals who worked as wait staff employees, service employees, or service bartenders for Defendants from June 26, 2017, to March 1, 2020, and were paid a Service Rate.

The court appoints Jeffrey S. Morneau of Connor & Morneau, LLP as class counsel.

A status conference will be held on October 12, 2021, at 11:00 a.m.  If the parties are unavailable, counsel are to confer regarding availability, come up with three mutually agreed upon dates, and so notify the court for rescheduling.

It is so ordered.

/s/ Katherine A. Robertson
KATHERINE A. ROBERTSON
United States Magistrate Judge

DATED: September 29, 2021