UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ARLETA MONGUE, | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | Civil No. 3:18-cv-30095-KAR |
| | ) | |
| | ) | |
| THE WHEATLEIGH CORPORATION, | ) | |
| L. LINFIELD SIMON, SUSAN SIMON, | ) | |
| and MARC WILHELM, | ) | |
| Defendants. | ) | |

MEMORANDUM AND ORDER ON PLAINTIFF'S
MOTION TO ENFORCE SETTLEMENT AGREEMENT
(Dkt No. 138)

ROBERTSON, U.S.M.J.

Plaintiff Arleta Mongue ("Plaintiff") is a former wait staff employee of the defendant The

Wheatleigh Corporation ("Wheatleigh"), which was owned and/or operated by the remaining

defendants L. Linfield Simon, Susan Simon, and Marc Wilhelm (collectively, "Defendants").

Plaintiff alleges in her amended complaint that Defendants violated the Fair Labor Standards

Act, 29 U.S.C. § 201 et seq., by failing to pay her an overtime premium, paying her less than the

federal minimum wage, not providing proper notice before utilizing a tip credit, and operating an

illegal tip pool.  Plaintiff also asserts state law claims against these Defendants under

Massachusetts wage laws.  Specifically, Plaintiff claims that Defendants violated the

Massachusetts Fair Minimum Wage Act, Mass. Gen. Laws ch. 151, §§ 1, 7, by paying Plaintiff

the service rate when she should have received full minimum wage due to Defendants' unlawful

distribution of its tip pools, the un-tipped tasks to which Plaintiff was assigned, and Defendants'

failure to provide proper written notice before utilizing the service rate; the Massachusetts Tips Act, Mass. Gen. Laws ch. 149, § 152A, by unlawfully distributing wages from the tip pool to non-wait staff employees and supervisors; and the Massachusetts Wage Act, Mass. Gen. Laws ch. 149, §§ 148, 150, by failing to timely pay wages.  The parties have consented to this court's jurisdiction (Dkt. No. 14).  *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.  Presently before the court is Plaintiff's Motion to Enforce Settlement Agreement (Dkt. No. 138).  For the reasons stated herein, the court GRANTS Plaintiff's motion.

## I.      PERTINENT PROCEDURAL HISTORY AND BACKGROUND

Plaintiff, though counsel, filed this action on June 20, 2018 (Dkt. No. 1).  This is one of four cases Plaintiff's counsel filed against Defendants.  Plaintiff's counsel also filed a complaint on behalf of Mark Brown, a former guest services manager, on April 11, 2018 (Case No. 3:18-cv-30056-KAR); Christian Perreault Hamel, a former restaurant manager, on July 17, 2018 (Case No. 3:18-cv-30113-KAR); and Mary Harris, a former housekeeping manager, on July 17, 2018 (Case No. 3:18-cv-30114-KAR) (referred to collectively as the "Individual Cases").  Brown, Hamel, and Harris (referred to collectively as the "Individual Plaintiffs") each alleged violations of the Fair Labor Standards Act and cognate Massachusetts wage laws based on their misclassification as managers who were exempt from overtime compensation.

On June 26, 2020, with leave of court, Plaintiff filed an amended complaint asserting class claims against Defendants (Dkt. No. 61).  Plaintiff filed a motion for certification of a class pursuant to Fed. R. Civ. P. 23(b)(3) limited to her state law claims on December 2, 2020 (Dkt. No. 75), which the court granted on September 29, 2021 (Dkt. No. 113).  The court ultimately certified a class consisting of "[a]ll individuals who worked as wait staff employees, service employees, or service bartenders for Defendants from May 7, 2017, to March 1, 2020, and were

2

paid a Service Rate" (Dkt. Nos. 113, 117).  The court appointed Plaintiff's counsel as class counsel (hereinafter "Class Counsel") (Dkt. No. 113).  While Defendants opposed class certification, they did not raise any conflict issues with respect to Class Counsel's appointment (Dkt. No. 86).

On December 22, 2021, Class Counsel sent an email to Defendants' then-counsel with a settlement demand for a "Gross Settlement Fund" or "GSF" of $580,000.00 to be allocated as follows: $8,103.00 to Brown (1.5 times single damages); $11,961.00 to Harris (1.5 times single damages); $8,124.00 to Hamel (single damages); $5,000.00 to Mongue (individually, as a service award for being the class representative); $27,102.00 to the Class for Class tip pool violations ($9,034.00 x 3); $234,884.80 to the Class for other violations; and $284,825.20 in attorneys' fees and costs (to be allocated between the four cases as Class Counsel chose) (Dkt. No. 133-1 at 3).  The email addressed a number of other terms, including that "Class Counsel may apply to the Court for an award of attorneys' fees and costs and expenses incurred in connection with the prosecution of the Litigation," and "Plaintiff may apply to the Court for an enhancement award in consideration for serving as Class Representative (i.e., the "Incentive Award") in an amount not to exceed $5,000.00, subject to approval by the Court to be paid out of the GSF" (Dkt. No. 133-1 at 3).

The following day, after further negotiations, then-counsel for Defendants responded "confirming that [the parties] have reached a global settlement on the terms stated" in Plaintiff's Counsel's email with two modifications, including that the total GSF would be $550K rather than $580K, with Class Counsel deciding how to adjust the allocation (Dkt. No. 133-1 at 2). Defense counsel further noted the following in connection with the agreement: (1) that the award of attorneys' fees and costs and expenses would be paid out of the GSF; (2) that Defendants

would get general releases from Brown, Harris, Hamel, and Mongue and could include a release of wage claims on the checks to class members; and (3) that all four lawsuits would be dismissed with prejudice (Dkt. No. 133-1 at 2). Plaintiff's Counsel responded, "[c]onfirmed."

Thereafter, on December 29, 2021, Defendants' then-counsel notified the court via emails to the Courtroom Clerk that the four cases against Defendants had been resolved, that the parties in the Individual Cases would be filing joint motions for 45-day nisi orders, and that Class Counsel would be following up with the court likely after the New Year in relation to the instant matter. On February 17, 2022, the parties filed a joint status report indicating that they intended to file a motion for preliminary approval of a class action settlement on or before March 4, 2022 (Dkt. No. 121). On March 4, 2022, the parties filed an updated joint status report indicating that they had made progress but needed additional time, until March 25, 2022, before Class Counsel could file the motion for preliminary approval of a class action settlement (Dkt. No. 123). On April 5, 2022, the parties jointly requested a status conference as they had "encountered obstacles to finalizing settlement" in the four matters (Dkt. No. 127).[1]

After the status conference was held on April 20, 2022, the parties entered into settlement agreements to resolve the three Individual Cases, and the Individual Plaintiffs filed stipulations of dismissal on May 6, 2022. Pursuant to the settlement agreements, Defendants were to pay $8,103.00 to Brown, $11,961.00 to Harris, and $8,124.00 to Hamel (Dkt. No. 133-2 at 2, 6, 10); these figures represented the same amounts that were contemplated in Class Counsel's December 22, 2021, settlement demand (Dkt. No. 133-1 at 3). The payment provisions and release of claims contained in the settlement agreements state that they are contingent on this court issuing a "Final Approval Order" in this matter, defined as an order approving a class action settlement

---

[1] The parties had also submitted joint motions to extend the nisi periods in the Individual Cases.

and dismissing the action with prejudice (Dkt. No. 133-2 at 1-2, 6-7, 10-11).  In addition, Defendants agreed to pay a maximum of $60,000.00 in attorney's fees and costs with respect to each of the three cases, for a total of up to $180,000.00, or any lesser amount this court may direct at any time before entry of a Final Approval Order in this matter (Dkt. No. 133-2 at 2, 6, 10).

In the instant matter, Defendants' then-counsel filed a status report notifying the court that defendant L. Linfield Simon (hereinafter "Simon") had instructed them "not to spend further time negotiating a settlement agreement … relat[ing] solely to the claims in this case" (Dkt. No. 131).  The status report was accompanied by a declaration of Simon, which Defendants' then-counsel represented he had prepared without their substantive assistance and had directed them to file, setting forth a number of arguments for why the settlement agreement could not be enforced, including the argument Defendants currently advance (Dkt. No. 133).  Defendants' then-counsel noted that they had "differing views [from Simon] regarding the relevant legal issues" and sought "guidance" on how to proceed (Dkt. No. 133 1t 1).  In response, the court issued an order directing Class Counsel to file a motion to enforce the parties' settlement agreement to the extent there existed a basis for doing so and indicating that it would entertain a request for attorneys' fees in connection with the motion to enforce (Dkt. No. 134).  The court further admonished Simon that it would not review or rule on anything he filed while represented by counsel unless it was filed by said counsel on his behalf (Dkt. No. 134).  *See McCulloch v. Velez*, 364 F.3d 1, 5 (1st Cir. 2004) (a party has a right to represent himself or to be represented by counsel but he cannot simultaneously have it both ways).  Finally, the court directed Defendants' then-counsel to the local rule setting forth the appropriate procedures for an attorney to withdraw his or her appearance (Dkt. No. 134).

In compliance with the court's order, Class Counsel filed the instant motion to enforce the settlement agreement.  Class Counsel also seeks its attorneys' fees and costs incurred in connection with the motion.  Defendants, through new counsel, oppose enforcement of the settlement agreement, object to the request for fees, and urge the court to establish a briefing schedule to revisit class certification, including whether Class Counsel satisfies the "adequacy" requirement of Fed. R. Civ. P. 23(a).  Defendants do not contest that they reached an agreement. Rather, they argue that this court cannot enforce the agreement because it violates public policy where enforcement would violate this court's fiduciary duties to unnamed class members due to an inherent conflict in Class Counsel's concurrent representation of the Individual Plaintiffs and Plaintiff, on the one hand, and the unnamed class members, on the other, in the negotiation of an aggregate settlement and attorneys' fee award across all cases.

## II.     DISCUSSION

"A party to a settlement agreement may seek to enforce the agreement's terms when the other party reneges."  *Malave v. Carney Hosp.*, 170 F.3d 217, 220 (1st Cir. 1999).  "If … the settlement collapses before the original suit is dismissed, the party who seeks to keep the settlement intact may file a motion for enforcement."  *Id*. (citing *United States v. Hardage*, 982 F.2d 1491, 1496 (10th Cir. 1993); *Mathewson Corp. v. Allied Marine Indus., Inc.*, 827 F.2d 850, 852–53 (1st Cir.1987)).  "In such circumstances, public policy favors enforcement of the agreement, 'so as to hold people to the contracts they make and to avoid costly and time-consuming litigation.'"  *Sills v. Rex Lumber Co.*, No. 20-CV-12235-AK, 2022 WL 2333715, at *1 (D. Mass. June 28, 2022) (quoting *Hansen v. Rhode Island's Only 24 Hour Truck & Auto Plaza, Inc.*, 962 F. Supp. 2d 311, 315 (D. Mass. 2013)).

"'[W]hen a district court purposes summarily to enforce a settlement, it first must ascertain whether or not a binding agreement in fact existed.'"  *Id*. at *2 (alteration in original) (quoting *Malave*, 170 F.3d at 222).  "'[I]t is axiomatic that to create an enforceable contract, there must be agreement between the parties on the material terms of that contract, and the parties must have a present intention to be bound by that agreement.'"  *D'Agostino v. Fed. Ins. Co.*, 969 F. Supp. 2d 116, 127 (D. Mass. 2013) (quoting *Situation Mgmt. Sys., Inc. v. Malouf, Inc.,* 724 N.E.2d 699, 703 (Mass. 2000)).  While not all terms of the agreement must be precisely specified, the parties must have reached an agreement on the essential terms.  *Id*. (citing *Situation Mgmt. Sys., Inc.,* 724 N.E.2d at 703).  "In the context of class action settlements …, courts generally find there is agreement on all of the material terms of settlement where the parties have agreed upon the monetary amount of the settlement payment and the fact that plaintiffs will release specific claims."  *Schaffer v. Litton Loan Servicing, LP*, No. CV 05-07673 MMM (JCx), 2012 WL 10274678, at *15 (C.D. Cal. Nov. 13, 2012).

Here, Defendants do not contest that there was an agreement between the parties (Dkt. No. 145 at 5).  Simon attaches a copy of the emails "setting out the terms of the settlement with respect to all parties" to his declaration and explains that "[t]he December 22 and December 23 emails are the sole documentation of the terms of the settlement that I accepted on behalf of the defendants" (Dkt. No. 133 at 3).  Thus, on this record, there is no dispute – nor could there be – that the parties reached an agreement on all the material terms of settlement.  See *Lane v. Powell*, No. CV 17-12356-PBS, 2020 WL 3404168, at *2 (D. Mass. June 19, 2020), *appeal dismissed*, No. 20-1631, 2020 WL 7873160 (1st Cir. Sept. 25, 2020) ("A district court can 'summarily enforce [a settlement] agreement, provided that there is no genuinely disputed question of

7

material fact regarding the existence or terms of that agreement.'" (quoting *Fid. & Guar. Ins. Co. v. Star Equip. Corp.*, 541 F.3d 1, 5 (1st Cir. 2008))).

Accordingly, the court turns to Defendants' argument that this court cannot enforce the settlement agreement without running afoul of public policy. Defendants' argument goes like this. Massachusetts courts do not enforce contracts on voidness grounds in the unusual circumstance where the "public interest in freedom of contract is … outweighed by public policy." *Santos v. City of Fall River*, 942 F. Supp. 2d 178, 186 (D. Mass. 2013) (quoting *Beacon Hill Civil Ass'n v. Ristorante Toscano, Inc.*, 662 N.E.2d 1015, 1017 (Mass. 1996)). However, "[t]he public policy affronted must be derived from legislation or legal precedent rather than from general considerations of supposed public interests." *Id*. (citing *Genzyme Corp. v. Fed. Ins. Co.*, 622 F.3d 62, 69 (1st Cir. 2010)). The legal precedent on which Defendants rely to craft their argument is that courts have "'a fiduciary duty to absent class members in light of the potential for conflicts of interest among class representatives and class counsel and the absent members,'" *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 71 (D. Mass. 2005) (quoting *In re Lupron® Mktg. & Sales Practices Litig.*, 228 F.R.D. 75, 94 (D. Mass. 2005)), and in contractual contexts, courts will not enforce agreements that constitute a promise by a fiduciary to violate his fiduciary duties on public policy grounds. Restatement (Second) of Contracts § 193 (1981). Here, according to Defendants, enforcement of the settlement agreement would result in the court breaching its fiduciary duties to absent class members because there is an inherent conflict in Class Counsel representing the Individual Plaintiffs and Mongue while concurrently representing the Class in the negotiation of an aggregate settlement and attorneys' fee award across all cases. In the court's view, whether the settlement agreement is fair to absent class

member is a matter for the absent class members and the court to determine through the careful review process required by Federal Rule of Civil Procedure 23(e).

Because this is a class action settlement, it is subject to this court's approval after notice to the Class with the opportunity for class member objections and a hearing. *See* Fed. R. Civ. P. 23(e). To approve the settlement, the court must find that it is "fair, reasonable, and adequate" after consideration of whether the class representative and Class Counsel have adequately represented the class; the proposal was negotiated at arm's length; the relief provided for the class is adequate; and the proposal treats Class members equitably relative to one another. *See id*. *See also In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 32 (1st Cir. 2009) (quoting *City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996)). In relation to Class Counsel's performance, "'[b]ecause class actions are rife with potential conflicts of interest between class counsel and class members, district judges are expected to give careful scrutiny to the terms of the proposed settlements in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole.'" *Id*. at 36 (quoting *Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 785 (7th Cir. 2004)). "When reviewing settlements, district courts also must ensure class counsel have met their ongoing duty, imposed by Rule 23(g)(4), to fairly and adequately represent the class." *Id*. at 36 n.12. This duty "requires counsel to represent the class competently and vigorously and without conflicts of interest with the class." *Id*. (citations omitted).

In addition, "[c]ounsel who recovers common funds for a class is entitled to reasonable attorneys' fees and reimbursement of expenses prior to the distribution of the balance to the class." *In re Ranbaxy Generic Drug Application Antitrust Litig.*, No. 19-md-02878-NMG, 2022 WL 4329646, at *3 (D. Mass. Sept. 19, 2022) (citing *Boeing Co. v. Van Gemert*, 444 U.S. 472,

478 (1980)).  *See also* Fed. R. Civ. P. 23(h) (providing that the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or the parties' agreement).  The award of attorneys' fees is subject to the discretion of the district court.  *Id.* (citing *In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 307 (1st Cir. 1995)).  In awarding attorneys' fees, a district court not only attempts to ensure that class counsel is fairly compensated, but also "function[s] as 'a quasi-fiduciary to safeguard the corpus of the fund for the benefit of the plaintiff class.'"  *Id.* (quoting *In re Fidelity/Micron Sec. Litig.*, 167 F.3d 735, 736 (1st Cir. 1999)).  *See also Arkansas Teacher Ret. Sys. v. State St. Bank & Tr. Co.*, 512 F. Supp. 3d 196, 208 (D. Mass. 2020), *appeal dismissed sub nom. Arkansas Teacher Ret. Sys. v. State St. Corp.*, No. 20-1365, 2020 WL 5793216 (1st Cir. Sept. 3, 2020), and *aff'd in part, appeal dismissed in part sub nom. Arkansas Teacher. Ret. Sys. v. State St. Corp.*, 25 F.4th 55 (1st Cir. 2022) ("When a class action has been settled, a common fund must be divided between class counsel and the members of the class.  At this point, there is a tension between the interests of counsel in maximizing their compensation and the interests of members of the class in maximizing their recovery. The court, therefore, acts as a fiduciary to protect the interests of the class.").

Thus, the court has the authority and obligation to consider and resolve conflict issues in light of objections, if any, by class members, including in regard to an award of attorneys' fees and costs to Class Counsel, as part of the process of determining whether to approve the settlement.  This will include consideration of not only the fees Class Counsel is seeking in this case, but also of the fees Class Counsel is to collect in the Individual Cases, which are also subject to court approval.  Defendants cannot and will not be permitted to raise the specter of a conflict between Class Counsel and the unnamed Class members in order to walk away from a

settlement to which they voluntarily agreed in full knowledge of Class Counsel's role in all four cases. Public policy strongly favors holding Defendants to their agreement and avoiding further costly and time-consuming litigation in this matter that has already been pending on this court's docket for over four years. The court will grant Plaintiff's motion to the extent that it seeks to bind Defendants to the terms of settlement to which they agreed as reflected in the parties' December 22, 2021, and December 23, 2021, emails.

The question of an award of attorney's fees is exceptionally close. "[A] court possesses inherent powers to award attorneys' fees against a party that 'has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Mullane v. Chambers*, 333 F.3d 322, 337-38 (1st Cir. 2003) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991)). The First Circuit, however, has cautioned that this power "'should be used sparingly and reserved for egregious circumstances.'" *Whitney Bros. Co. v. Sprafkin*, 60 F.3d 8, 13 (1st Cir. 1995) (quoting *Jones v. Winnepesaukee Realty*, 990 F.2d 1, 3 (1st Cir. 1993)). A district court exercising this power "must describe the bad faith conduct with 'sufficient specificity,' accompanied by a 'detailed explanation of the reasons justifying the award.'" *Id.* (quoting *Gradmann & Holler GmbH v. Cont'l Lines, S.A.*, 679 F.2d 272, 274 (1st Cir. 1982)). "The attempt to repudiate or alter the terms of an agreement after settlement may justify an award of attorneys' fees to the party who, as a result, expends subsequent resources to enforce or defend the agreement." *Tocci v. Antioch Univ.*, 967 F. Supp. 2d 1176, 1201 (S.D. Ohio 2013), *aff'd* (June 10, 2014) (citing *Jaynes v. Austin,* 20 Fed. Appx. 421 (6th Cir.2001)). *See also Abdullah v. Evolve Bank & Tr.*, No. CA 14-131 S, 2015 WL 4603229, at *5 (D.R.I. July 29, 2015) (When a litigant's bad faith or vexatious conduct delays the consummation of a crisp and unambiguous settlement agreement, attorneys' fees and costs are appropriate to be awarded to any party injured by the delay.").

Defendants profess that their concerns with the class action settlement agreement are legitimate and that they have valid, good-faith grounds to avoid the settlement (Dkt. No. 145 at 8 n.7).  There is, of course, nothing in the record to suggest that, in seeking to avoid their obligations under the settlement agreement to which they freely agreed, Defendants have the interests of the absent class members at heart.  Nor have Defendants provided any authority to the effect that a defendant can withdraw from a clear and unambiguous settlement agreement by belatedly claiming that Class Counsel has a conflict.  Furthermore, there was no change in circumstances between the date on which Defendants agreed to the settlement, and the date on which Simon directed his reluctant attorneys to seek to void the settlement to which he had agreed.

Nonetheless, the court is not convinced that the record supports an award of attorney's fees where Plaintiff's counsel did not file an affidavit regarding the events leading up to the filing of the motion to compel on which the court might rest a finding of bad faith or quantifying and justifying the amount of fees and costs.  Indeed, although Plaintiff's counsel makes a passing reference to Simon's declaration, the only argument advanced by Plaintiff in support of an award of fees is that the court stated that it would entertain a request for fees if Plaintiff filed a motion to enforce the settlement agreement (Dkt. No.138 at 7-8).  In view of the caution required of a district court, a party asking the court to exercise its inherent authority to award fees must do more to show the egregious circumstances that would warrant an award of fees.

## III.    CONCLUSION

For the above-stated reasons, Plaintiff's Motion to Enforce Settlement Agreement (Dkt. No. 138) is GRANTED insofar as the court orders that the parties' settlement agreement will be enforced and DENIED insofar as Plaintiff seeks an award of fees in connection with this motion.

It is so ordered.

Dated: November 22, 2022                          /s/ Katherine A. Robertson_____
                                                  KATHERINE A. ROBERTSON
                                                  United States Magistrate Judge