UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ARLETA MONGUE, | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | Civil No. 3:18-cv-30095-KAR |
| | ) | |
| | ) | |
| THE WHEATLEIGH CORPORATION, | ) | |
| L. LINFIELD SIMON, SUSAN SIMON, | ) | |
| and MARC WILHELM, | ) | |
| Defendants. | ) | |

MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
(Dkt No. 157)

ROBERTSON, U.S.M.J.

Plaintiff Arleta Mongue ("Plaintiff"), a former wait staff employee of the defendant The

Wheatleigh Corporation ("Wheatleigh"), which was owned and/or operated by the remaining

defendants L. Linfield Simon, Susan Simon, and Marc Wilhelm (collectively, "Defendants"),

brings this class action alleging Massachusetts wage law violations on her own behalf and on

behalf of other similarly situated wait staff employees.  The parties have consented to this court's

jurisdiction (Dkt. No. 14).  *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.  Presently before the court

is Plaintiff's Motion for Preliminary Approval of Class Action Settlement (Dkt. No. 157), which

Defendants oppose (Dkt. No. 163).  For the reasons stated herein, the court: (1) GRANTS

Plaintiff's motion insofar as Plaintiff seeks an order preliminarily approving the settlement of

this class action as reflected in the parties' December 22, 2021, and December 23, 2021, emails

and enforced by this court (Dkt. No. 155)[1]; (2) provisionally appoints Plaintiff as Class

Representative; (3) directs Class Counsel to cause the settlement administrator to provide notice

in the form attached as Exhibit 1 to this Order to all Class members entitled to participate in the

settlement ("Settlement Class Members")[2]; and (4) sets a briefing schedule and date for a

fairness hearing at which Settlement Class Members may appear to support or object to the

proposed settlement before the court considers whether to grant final approval of the parties'

agreement.

## I.      PERTINENT PROCEDURAL HISTORY AND BACKGROUND

Plaintiff filed this action on June 20, 2018, alleging that Defendants violated the Fair

Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, by failing to pay her an overtime

premium, paying her less than the federal minimum wage, not providing proper notice before

utilizing a tip credit, and operating an illegal tip pool.  Plaintiff also asserted state law claims

against these Defendants under Massachusetts wage laws.  Specifically, Plaintiff claimed that

Defendants violated the Massachusetts Fair Minimum Wage Act, Mass. Gen. Laws ch. 151, §§

1, 7, by paying Plaintiff the service rate when she should have received full minimum wage due

to Defendants' unlawful distribution of its tip pools, the un-tipped tasks to which Plaintiff was

assigned, and Defendants' failure to provide proper written notice before utilizing the service

rate; the Massachusetts Tips Act, Mass. Gen. Laws ch. 149, § 152A, by unlawfully distributing

---

[1] One of Defendants' arguments for denying Plaintiff's motion for preliminary approval is that it
seeks to enforce the wrong agreement, insofar as Plaintiff attached an unexecuted class action
settlement agreement and release to her supporting memorandum (Dkt. No. 158-1).  Because the
court is granting Plaintiff's motion to the extent it seeks to enforce the settlement of this class
action as reflected in the parties' December 22, 2021, and December 23, 2021, emails and
enforced by this court, this argument is moot.

[2] The parties may, by mutual agreement, revise the notice attached as Exhibit 1 to this Order to
correct clerical errors or for purposes of formatting and to fill in missing information, including
the name and address of the Class Member and his or her respective award, as well as the name
and address of the Settlement Administrator.

wages from the tip pool to non-wait staff employees and supervisors; and the Massachusetts

Wage Act, Mass. Gen. Laws ch. 149, §§ 148, 150, by failing to timely pay wages (Dkt. No. 1).

By way of an amended complaint filed with leave of court, Plaintiff added claims for a collective

action under the FLSA and class claims under the Massachusetts wage laws (Dkt. No. 61).  The

court ultimately certified a Fed. R. Civ. P. 23(b)(3) class limited to Plaintiff's state law claims,

consisting of "[a]ll individuals who worked as wait staff employees, service employees, or

service bartenders for Defendants from May 7, 2017, to March 1, 2020, and were paid a Service

Rate" (hereinafter, "the Class") (Dkt. Nos. 113, 117).  The court appointed Plaintiff's counsel as

class counsel (hereinafter "Class Counsel") (Dkt. No. 113).

     Plaintiff's case was one of four cases that Class Counsel filed against Defendants.  Class

Counsel also filed a complaint on behalf of Mark Brown ("Brown"), a former guest services

manager, on April 11, 2018 (Case No. 3:18-cv-30056-KAR); Christian Perreault Hamel

("Hamel"), a former restaurant manager, on July 17, 2018 (Case No. 3:18-cv-30113-KAR); and

Mary Harris ("Harris"), a former housekeeping manager, on July 17, 2018 (Case No. 3:18-cv-

30114-KAR) (referred to collectively as the "Individual Cases").  Brown, Hamel, and Harris

(referred to collectively as the "Individual Plaintiffs") each alleged violations of the Fair Labor

Standards Act and cognate Massachusetts wage laws based on their misclassification as

managers who were exempt from overtime compensation.

     Simultaneous to litigating this class action and the Individual Cases, the parties engaged

in settlement negotiations.  Pursuant to those negotiations, on December 22, 2021, Class Counsel

sent an email to Defendants' then-counsel with a settlement demand for a "Gross Settlement

Fund" or "GSF" of $580,000.00 to be allocated as follows: $8,103.00 to Brown (1.5 times single

damages); $11,961.00 to Harris (1.5 times single damages); $8,124.00 to Hamel (single

damages); $5,000.00 to Plaintiff (individually, as a service award for being the class representative); $261,986.80 to the Class for tip pool and other violations,[3] and $284,825.20 in attorneys' fees and costs (to be allocated between the four cases as Class Counsel chose) (Dkt. No. 133-1 at 3-4).  The email addressed a number of other terms, including that "Class Counsel may apply to the Court for an award of attorneys' fees and costs and expenses incurred in connection with the prosecution of the Litigation," and "Plaintiff may apply to the Court for an enhancement award in consideration for serving as Class Representative (i.e., the "Incentive Award") in an amount not to exceed $5,000.00, subject to approval by the Court to be paid out of the GSF" (Dkt. No. 133-1 at 3).

The following day, after further negotiations, then-counsel for Defendants responded "confirming that [the parties] have reached a global settlement on the terms stated" in Class Counsel's email with two modifications, including that the total GSF would be $550,000 rather than $580,000, with Class Counsel deciding how to adjust the allocation (Dkt. No. 133-1 at 2). Defense counsel further noted the following in connection with the agreement: (1) that the award of attorneys' fees and costs and expenses would be paid out of the GSF; (2) that Defendants would get general releases from Brown, Harris, Hamel, and Plaintiff and could include a release of wage claims on the checks to members of the Class; and (3) that all four lawsuits would be dismissed with prejudice (Dkt. No. 133-1 at 2).  Class Counsel responded, "[c]onfirmed" (Dkt. No. 133-1 at 2).

Thereafter, on December 29, 2021, Defendants' then-counsel notified the court via emails to the Courtroom Clerk that the four cases against Defendants had been resolved, that the parties in the Individual Cases would be filing joint motions for 45-day nisi orders, and that Class

---

[3] This figure consisted of the sum of $27,102.00 to the Class for tip pool violations ($9,034.00 x 3) and $234,884.80 to the Class for other violations.

Counsel would be following up with the court likely after the New Year in relation to the instant matter.  On February 17, 2022, the parties filed a joint status report indicating that they intended to file a motion for preliminary approval of a class action settlement on or before March 4, 2022 (Dkt. No. 121).  On March 4, 2022, the parties filed an updated joint status report indicating that they had made progress but needed additional time, until March 25, 2022, before Class Counsel could file the motion for preliminary approval of a class action settlement (Dkt. No. 123).  On April 5, 2022, the parties jointly requested a status conference as they had "encountered obstacles to finalizing settlement" in the four matters (Dkt. No. 127).[4]

After the status conference was held on April 20, 2022, the parties entered into settlement agreements to resolve the three Individual Cases, and the Individual Plaintiffs filed stipulations of dismissal on May 6, 2022.  Pursuant to the settlement agreements, Defendants were to pay $8,103.00 to Brown, $11,961.00 to Harris, and $8,124.00 to Hamel (Dkt. No. 133-2 at 2, 6, 10); these figures represented the same amounts that were contemplated in Class Counsel's December 22, 2021, settlement demand (Dkt. No. 133-1 at 3).  The payment provisions and release of claims contained in the settlement agreements stated that they were contingent on this court issuing a "Final Approval Order" in this matter, defined as an order approving a class action settlement and dismissing the action with prejudice (Dkt. No. 133-2 at 1-2, 6-7, 10-11).  In addition, Defendants agreed to pay a maximum of $60,000.00 in attorney's fees and costs with respect to each of the three cases, for a total of up to $180,000.00, or any lesser amount this court might direct at any time before entry of a Final Approval Order in this matter (Dkt. No. 133-2 at 2, 6, 10).

---

[4] The parties also had submitted joint motions to extend the nisi periods in the Individual Cases.

In the instant matter, Defendants' then-counsel filed a status report notifying the court that defendant L. Linfield Simon (hereinafter "Simon") had instructed them "not to spend further time negotiating a settlement agreement … relat[ing] solely to the claims in this case" (Dkt. No. 131 at 1).  The status report was accompanied by a declaration of Simon (Dkt. No. 133), which Defendants' then-counsel represented he had prepared without their substantive assistance and had directed them to file (Dkt. No. 131 at 1), setting forth a number of arguments for why the settlement agreement could not be enforced, including because Class Counsel did not have the authority to enter into a settlement on behalf of the Individual Plaintiffs and the Class due to the conflict in Class Counsel's representation of both the Individual Plaintiffs and the Class.  While Defendants had opposed class certification, they had not raised any conflict issues with respect to Class Counsel's appointment at that time (Dkt. No. 86).  In response to the status report, the court issued an order directing Class Counsel to file a motion to enforce the parties' settlement agreement to the extent there existed a basis for doing so (Dkt. No. 134).

In compliance with the court's order, Class Counsel filed a motion to enforce the settlement agreement (Dkt. No. 138).  Defendants, through new counsel, opposed enforcement of the settlement agreement and urged the court to establish a briefing schedule to revisit class certification, including whether Class Counsel satisfied the "adequacy" requirement of Fed. R. Civ. P. 23(a) (Dkt. No. 145).  Defendants did not contest that they had reached an agreement. Rather, they argued that the court could not enforce the agreement because doing so would constitute a violation of public policy insofar as it would violate this court's fiduciary duties to unnamed Class members due to an inherent conflict in Class Counsel's concurrent representation of the Individual Plaintiffs and Plaintiff, on the one hand, and the unnamed Class members, on the other, in the negotiation of an aggregate settlement and attorneys' fee award across all cases.

On November 22, 2022, the court granted Plaintiff's motion to enforce the settlement agreement to the extent it sought to bind Defendants to the terms of settlement to which they had indisputably agreed as reflected in the parties' December 22, and December 23, 2021, emails (Dkt. No. 155).  The court noted that the issue of whether the settlement is fair to absent Class members would be a matter for the court to determine through the review process required by Fed. R. Civ. P. 23(e).  Thereafter, on March 28, 2023, Plaintiff filed the instant motion for preliminary approval of the class action settlement (Dkt. No. 157).

Given the settlement payments to be made out of the GSF in connection with the Individual Cases, including the attorneys' fee awards of $60,000.00 in each of those matters, there remains $341,812.00 to settle the Class claims.  Class Counsel proposes that this fund be disbursed as follows:  $243,918.80 to the Class for notice and tip pool violations, up to $92,893.20 in attorneys' fees and costs, and up to $5,000.00 as a service award for Plaintiff. Plaintiff has represented that there are approximately 62 individuals that fall within the Class definition and that 43 of them are entitled to participate in the settlement; the remaining 19 are not entitled to damages because they either did not participate in the tip pool, received more than the minimum wage per hour worked in each pay period, or did not work for more than 40 hours in any workweek.  Plaintiff proposes to use a pro rata allocation formula to disburse the $243,918.80 to these 43 individuals.  Plaintiff used the time sheets and payroll documents produced by Defendants in discovery to determine for each of these individuals the number of regular hours worked, the number of overtime hours worked, and the rates of pay for regular hours and overtime hours.  Class Counsel then determined the difference between the rates that were paid and the rates that should have been paid under Massachusetts law for regular hours and for overtime hours, multiplied the regular hours differential by the regular hours worked and

the overtime differential by the overtime hours worked, and added these two figures together to determine a total single damages figure for each person.  According to Class Counsel, the total of the single damages figures for each of the 43 individuals entitled to participate in the settlement is approximately $189,729.90.  The $243,918.80 figure represents 129% of the estimated single damages and would be disbursed by mail to each of the 43 individuals in their percentage share unless they opt out of the settlement.

## II.   LEGAL STANDARD

"The claims, issues, or defenses of a certified class – or a class proposed to be certified for purposes of settlement – may be settled, voluntarily dismissed, or compromised only with the court's approval."  Fed. R. Civ. P. 23(e).  Approval under Rule 23(e) involves two steps.  At the first stage, the court makes a preliminary determination regarding the fairness, reasonableness, and adequacy of the settlement terms.  *Meaden v. HarborOne Bank*, Civil Action No. 23-CV-10467-AK, 2023 WL 3529762, at * (D. Mass. May 18, 2023) (citing *Hochstadt v. Boston Sci. Corp.*, 708 F. Supp. 2d 95, 97 n.1 (D. Mass. 2010)).  *See also* Fed.  R. Civ. P. 23(e)(2).  At the second stage, after notice to all class members and a hearing at which class members may appear to support or object to the proposed settlement, the court determines whether final approval is warranted.  *Id*.

At the preliminary approval stage, which is where the instant matter is, the role of the court effectively is to serve as a fiduciary for absent class members and protect them from an unjust or unfair settlement.  *Wright v. S. N.H. Univ.*, 565 F. Supp. 3d 193, 206 (D.N.H. 2021) (citing *In re Lupron® Mktg. & Sales Pracs. Litig.*, 228 F.R.D. 75, 93 (D. Mass. 2005)).  Rule 23(e) sets forth four factors for the court to consider in making the preliminary approval determination, including: (1) whether the class representatives and counsel have adequately

represented the class; (2) whether the proposal was negotiated at arm's length; (3) whether the relief provided for the class is adequate; and (4) whether the proposal treats class members equitably relative to each other.  Fed. R. Civ. P. 23(e)(2)(A)-(D).  In considering whether the relief provided is adequate, the court takes into account: the costs, risks, and delay of trial and appeal; the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; and the terms of any proposed award of attorney's fees, including timing of payment.  Fed. R. Civ. P. 23(e)(2)(C)(i)-(iii).  "There is a presumption that a negotiated settlement is within the range of reasonableness '[w]hen sufficient discovery has been provided and the parties have bargained at arms-length.'"  *Wright*, 565 F. Supp. 3d at 206 (quoting *City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996)).

## III.    DISCUSSION

### A.    Preliminary Approval of the Proposed Settlement

The court finds that consideration of each of the factors enumerated in Rule 23(e) counsels in favor of a finding of fairness, reasonableness, and adequacy with respect to the proposed settlement.  The court addresses each factor in turn.

#### 1.  *Plaintiff and Class Counsel Have Adequately Represented the Class*

The court preliminarily finds that Plaintiff, who the court appoints as Class Representative, and Class Counsel have adequately represented the class for purposes of Rule 23(e)(2)(A).  Plaintiff shares the core interests of the Settlement Class Members.  She was a wait staff employee at Wheatleigh, who, like the other wait staff, was paid the service rate despite Defendants' alleged assignment to her of un-tipped tasks and failure to provide proper written notice before utilizing the service rate, and she, like the other wait staff, was allegedly damaged

9

when Defendants distributed wages from the tip pool to non-wait staff employees and supervisors.  Plaintiff has no fundamental conflicts of interest with the Settlement Class Members that would prevent her from vigorously pursuing their interests.  *See Murray v. Grocery Delivery E-Servs. USA Inc.*, 55 F.4th 340, 345 (1st Cir. 2022) ("[T]he adequate representation inquiry ""'serves to uncover conflicts of interest between named parties and the class they seek to represent.""'" (quoting *Cohen v. Brown Univ.*, 16 F.4th 935, 945 (1st Cir. 2021)).  Class Counsel also has represented that Plaintiff spent time and effort diligently representing the Class, such as by sitting for a deposition and making herself available to assist with the litigation (Dkt. No. 79-8).

Regarding Class Counsel, the court has already made an "initial evaluation of [his] capacities and experience" at the class certification stage (Dkt. No. 113 at 20).  Fed. R. Civ. P. 23(e)(2) Advisory Committee Notes.  "[T]he focus at this point is on the actual performance of counsel acting on behalf of the class."  *Id*.  Critical to this inquiry is whether class counsel had an "adequate information base," considering the "nature and amount of discovery," which informed the decision to agree to the settlement.  *Id*.  In this regard, Class Counsel appears to have conducted extensive fact discovery.  Class Counsel represents that he reviewed thousands of pages of wage records for class members, and he conducted at least five depositions, including of defendants Marc Wilhelm and L. Linfield Simon (Dkt. Nos. 79-2, 79-3, 79-4, 79-5, 79-7, 79-9, and 79-11).  The court notes that Class Counsel also devoted significant time and expertise to his representation of the Class, including in identifying the class claims and prevailing on a motion for leave to file an amended complaint to add them, obtaining certification of the Class, and filing both a motion for summary judgment and an opposition to Defendants' cross-motion (Dkt. Nos. 77 and 90).

In addition to the requirement that counsel act competently and vigorously in the representation of the class, fairness and adequacy require that counsel not have conflicts of interest with the class.  *See In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 36 n.12 (1st Cir. 2009).  Defendants argue that Class Counsel has not adequately represented the Class because of an inherent conflict that arose by virtue of his concurrent representation of the Individual Plaintiffs, Plaintiff, and the Class where he negotiated an aggregate settlement for all cases and may have done so without informed consent.  Defendants note that they are not impugning Class Counsel's conduct or motives.  Rather, they argue that even the appearance of divided loyalties is contrary to Class Counsel's responsibility to unnamed class members.

Defendants rely on *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999), in which the Supreme Court held in a Fed. R. Civ. P. 23(b)(1)(B)[5] limited fund asbestos personal injury case that a class divided between holders of present and future claims required division into subclasses each with separate representation to eliminate conflicting interests of counsel.  *Id.* at 856.  This was because those with present claims were interested in large immediate payments while those with future claims were interested in inflation-protected funds for the future.  *Id.* at 856.  The *Ortiz* Court cited *Moore's Federal Practice* for the proposition that "an attorney who represents another class against the same defendant may not serve as class counsel."  *Id*.

However, at least one court has recognized that "[t]he treatise *Newberg on Class Actions* § 3:75 (5th ed.) takes a more nuanced approach."  *Sandoval v. Ali*, 34 F. Supp. 3d 1031, 1047 (N.D. Cal. 2014).

---

[5] This rule provides that a class action may be maintained if the requirements of Fed. R. Civ. P. 23(a) are satisfied and "adjudications with respect to individual class members …, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Fed. R. Civ. P. 23(b)(1)(B).

> Like a lawyer in any litigation, a class action attorney may not simultaneously represent two clients if those clients' interests are directly adverse or if there is a significant risk that the dual representation will materially limit the lawyer's representation of one client.  Such attorney conflicts, like those of the class representative, are material to the question of whether the proposed class counsel can adequately represent the class; but as with class representatives, only client conflicts that are material and presently manifest – rather than merely trivial, speculative, or contingent on the occurrence of a future event – will affect the adequacy of class counsel.

*Newberg on Class Actions* § 3:75.  The rule, according to *Newberg*, is that "class counsel may represent multiple sets of litigants – whether in the same action or in a related proceeding – so long as the litigants' interests are not inherently opposed." *Id*.  *Newberg* goes on to note that, "[t]he few courts that have denied a finding of adequacy due to simultaneous representation of multiple sets of litigants, or simultaneous actions in multiple forums, have done so only when the recovery of one group or in one forum inherently conflicts with the recovery of the other." *Id*. "*Newberg* sets forth examples such as where a limited fund means that the recovery of one claimant will cut directly into recovery by another [as in *Ortiz*], where substantive law permits recovery by only one or the other set of litigants, where one client is litigating an appeal to a class action settlement in which another client claimed recovery, and where counsel's actions have generated conflicts between class representatives and the class." *Sandoval*, 34 F. Supp. 3d at 1047.

The court here finds that Class Counsel does not have conflicts of interest with the Class by nature of his concurrent representation of the Individual Plaintiffs.  This case, unlike *Ortiz*, does not involve a limited fund that is insufficient to satisfy all claims.  There is no information before the court to suggest that the $550,000 GSF represents Defendants' only assets.  Nor are any of the other scenarios *Newberg* identifies present.  Nevertheless, Defendants claim that Class

Counsel's negotiation of the $550,000 GSF and allocation of that amount into the separate pending actions, including attorney's fees recoveries, raises conflicts.  The court disagrees.

First, regarding the issue of attorney's fees, "[c]ounsel who recovers common funds for a class is entitled to reasonable attorneys' fees and reimbursement of expenses prior to the distribution of the balance to the class."  *In re Ranbaxy Generic Drug Application Antitrust Litig.*, MDL No. 19-md-02878-NMG, 2022 WL 4329646, at *3 (D. Mass. Sept. 19, 2022) (citing *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)).  *See also* Fed. R. Civ. P. 23(h) (providing that the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or the parties' agreement).  At the point of division, "there is a tension between the interests of counsel in maximizing their compensation and the interests of members of the class in maximizing their recovery."  *Arkansas Teacher Ret. Sys. v. State St. Bank & Tr. Co.*, 512 F. Supp. 3d 196, 208 (D. Mass. 2020), *appeal dismissed sub nom. Arkansas Teacher Ret. Sys. v. State St. Corp.*, No. 20-1365, 2020 WL 5793216 (1st Cir. Sept. 3, 2020), and *aff'd in part, appeal dismissed in part sub nom. Arkansas Teacher. Ret. Sys. v. State St. Corp.*, 25 F.4th 55 (1st Cir. 2022)).  Thus, in awarding attorneys' fees, a district court not only attempts to ensure that class counsel is fairly compensated, but also "function[s] as 'a quasi-fiduciary to safeguard the corpus of the fund for the benefit of the plaintiff class.'"  *In re Ranbaxy Generic Drug Application Antitrust Litig.*, 2022 WL 4329646, at *3 (quoting *In re Fidelity/Micron Sec. Litig.*, 167 F.3d 735, 736 (1st Cir. 1999)).  The only thing that sets the circumstances of this case apart from a typical class action settlement involving a common fund is that Class Counsel negotiated $60,000 in fees in connection with each of the Individual Cases as part of the global settlement. However, this fact does not transform the inherent tension between the interests of Class Counsel in maximizing his fees and the interests of the members of the Class in maximizing their

recovery into a disqualifying conflict.  Rather, it simply requires that the court, in assessing the reasonableness of the fees Class Counsel is seeking in connection with his representation of the Class, take into consideration the fees Class Counsel is set to collect in the Individual Cases. *Carlson v. Target Enter., Inc.*, 447 F. Supp. 3d 1, 3-4 (D. Mass. 2020) (noting that "district courts have 'extremely broad' discretion when determining fee awards" and that "[r]egardless of the method used to calculate a fee award, the touchstone of the analysis is reasonableness") (citing *In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 309 (1st Cir. 1995), and *In re Fidelity/Micron Sec. Litig.*, 167 F.3d at 738).  This the court will do, as set out below.

Second, the court addresses Class Counsel's supposedly divided loyalties between the Individual Plaintiffs and the Class.  Generally speaking, both the Individual Plaintiffs' and the Class's interests are adverse to Defendants.  The interests of the Individual Plaintiffs and the Class are only adverse to one another to the extent that they each have an interest in maximizing the size of their recoveries from Defendants.  While Defendants make little effort to articulate the nature of the conflict, their argument appears to be that, under these circumstances, Class Counsel might have accepted a lesser amount for the Class, or allocated a lesser amount of the GSF to the Class, because of his loyalties to the Individual Plaintiffs.  In other words, Class Counsel might have been incentivized to trade benefits to the Class for benefits to the Individual Plaintiffs in order to reach a settlement.

Review of the terms of the settlement belies this argument.  The recoveries of the Individual Plaintiffs consist of $11,961.00 to Harris, $8,103.00 to Brown, and $8,124.00 to Hamel.  These figures represent single damages for Hamel and 1.5 times single damages for Harris and Brown.  The size of these awards to the Individual Plaintiffs is simply not of a

14

magnitude that calls into question Class Counsel's loyalties when compared to the size of the proposed recoveries for the Settlement Class Members. The Settlement Class Members stand to recover 1.29 times their single damages, with an average award of $5,672.53. Eight of the 43 Settlement Class Members stand to recover more than Harris and an additional three more than Brown and Hamel (Dkt. No. 158-2). Nor are the recoveries of the Individual Plaintiffs out of proportion to the amounts routinely granted to class representatives or the $5,000.00 Mongue intends to seek in connection with being the Class Representative in this case. *See Murray*, 55 F.4th at 352 (finding that the district court did not err in approving awards between $2,000 and $10,000 apiece for the named plaintiffs). Finally, the sum of the awards to the Individual Plaintiffs is not so large that it greatly reduces the pool of money available to the Class.

Instead, it appears to the court that Defendants are again raising the specter of a conflict in an attempt to get out of the global settlement, which they negotiated with full knowledge of Class Counsel's representation of both Individual Plaintiffs and the Class and to which they voluntarily and unequivocally agreed. That said, this court has the authority and obligation to consider and resolve conflict issues in light of objections, if any, by Settlement Class Members as part of the process of determining whether to grant final approval of the settlement. At this time, however, the court is satisfied for purposes of this preliminary determination that Class Counsel has adequately represented the interests of the certified class in this action.

2. *The Proposed Settlement Was Negotiated at Arm's Length*

The court preliminarily finds that the proposed settlement was negotiated at arm's length. Fed. R. Civ. P. 23(e)(2)(B). This factor focuses on whether settlement negotiations "were conducted in a manner that would protect and further the class interests." Fed. R. Civ. P. 23(e)(2) Advisory Committee Notes. Here, Class Counsel has represented that settlement was

15

not reached until after the parties engaged in a full-day mediation and follow-up with an experienced and well-qualified mediator, as well as numerous settlement conferences between the lawyers.  Moreover, as set forth above, after agreeing to settle this matter on the terms as set forth in the December 22, and 23, 2001, emails, Defendants attempted to renege on their agreement, requiring the court to make the determination that a settlement had been reached. Under these circumstances, the court readily makes a preliminary determination that the negotiations were conducted at arm's length and without collusion between the parties.  This means that the presumption of reasonableness applies.  *See Wright*, 565 F. Supp. 3d at 206.

### 3.  The Relief Provided to the Class is Adequate

The court preliminarily finds that the relief provided to the Class as a result of the settlement is adequate. Fed. R. Civ. P. 23(e)(2)(C).  As set forth above, pursuant to the settlement, $243,918.80 would go into the settlement fund to be disbursed to the 43 individuals who fall within the Class definition and are entitled to participate in the settlement.  This figure represents 129% of the disputed wages, and the average projected settlement check is approximately $5,672.53.  This is significant monetary relief.  *See Purinton v. Moody's Co-Worker Owned, Inc.*, No. 2:20-cv-00296-JAW, 2023 WL 167560, at *3 (D. Me. Jan. 12, 2023) (approving settlement representing 69% of the total claimed unpaid wages for the class). Moreover, as set out below, consideration of each of the factors identified in Fed. R. Civ. P. 23(e)(2)(C) counsels in favor of a finding that the relief provided is adequate.

### (a)  The costs, risks, and delay of trial and appeal

If this action were not resolved now, the costs, risks, and delay of continued litigation could be substantial.  This case has already been pending for five years, and Defendants continue to vigorously contest liability, maintaining that their tip pool policy was legal and that they

provided proper written notice before utilizing the service rate by prominently displaying a Massachusetts Wage and Hour Law poster from the Office of the Attorney General.  Plaintiff disputes the legality of the tip pool policy, denies any recollection of ever seeing the poster, and maintains that even if Defendants displayed the poster as they claim it was insufficient to satisfy the notice requirements.  The risk and expense of continued litigation could outweigh any additional recovery Plaintiff might obtain from a litigated outcome, and Defendants could be expected to appeal any verdict favorable to the Class, resulting in further delay and the risk that a favorable verdict could be overturned on appeal.  Even under the best-case scenario, the Class would receive nothing for years, and, under the worst case would never recover.  By contrast, settlement provides for a quicker recovery for the Class.  *See Wright*, 565 F. Supp. 3d at 207 ("The proposed payments to class members constitute provision of substantial relief to the settlement class without requiring class members to incur the risks, burdens, costs, or delay associated with continued litigation, trial, and possible appeal.").  Thus, this sub-factor weighs in favor of preliminary approval.

(b) Effectiveness of any proposed method of distributing relief to the class

Under this sub-factor, the court "scrutinize[s] the method of claims processing to ensure that it facilitates filing legitimate claims" and "should be alert to whether the claims process is unduly demanding."  Fed. R. Civ. P. 23 Advisory Committee Notes.  Under the settlement, Settlement Class Members who have been identified through Defendants' employment records will receive a settlement payment by mail unless they opt out of the settlement.  This method is likely to be highly effective, as no claims form or other response is required from Settlement Class Members before they will receive their payment.

(c) The terms of any proposed award of attorney's fees

Under Rule 23(h), "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "In determining a fee for class counsel, the court's objective is to ensure an overall fee that is fair for counsel and equitable within the class." Fed. R. Civ. P. 23 Advisory Committee Notes. "Usually courts award class counsel a percentage of the common fund as attorneys' fees. Frequently the most appropriate award is found to be in the 20 to 30% range." *Arkansas Tchr. Ret. Sys. v. State St. Bank & Tr. Co.*, 512 F. Supp. 3d 196, 208 (D. Mass. 2020), *aff'd in part, appeal dismissed in part sub nom. Arkansas Tchr. Ret. Sys. v. State St. Corp.*, 25 F.4th 55 (1st Cir. 2022). Well-known factors that judges customarily consider in awarding attorneys' fees include: "(1) the size of the fund and the number of persons benefitted; (2) the skill, experience, and efficiency of the attorneys involved; (3) the complexity and duration of the litigation; (4) the risks of the litigation; (5) the amount of time devoted to the case by counsel; (6) awards in similar cases; and (7) public policy considerations." *In re Neurontin Mktg. & Sales Practices Litig.*, 58 F. Supp. 3d 167, 170 (D. Mass. 2014). "In addition to considering the customary factors, courts regularly check the reasonableness of a requested fee award against the 'lodestar' of plaintiff's counsel to determine whether awarding a multiple of the lodestar is justified." *Arkansas Tchr. Ret. Sys.*, 512 F. Supp. 3d at 209.

Here, Class Counsel intends to request $92,893.20 in attorneys' fees. This represents 27.2% of the total $341,812.00 of the GSF going to settle the class claims, which falls within the range of an appropriate percentage of the fund ("POF") reward. However, taking into consideration the three Individual Cases as well as this case, Class Counsel would be recovering $272,893.20 in attorneys' fees, which represents 49.6% of the total GSF. The court will

scrutinize the high POF Class Counsel is seeking to recover from the vantage point of the total GSF at the fairness hearing, and any motion for attorneys' fees should include a lodestar analysis with appropriate accompanying documentation. Nevertheless, at this point, the court finds that this factor weighs in favor of a finding of reasonableness.

(d) Any agreement required to be identified under Rule 23(e)(3)

Subdivision (e)(3) requires parties seeking approval of a settlement to identify any agreement made in connection with the proposed settlement. "It aims … at related undertakings that, although seemingly separate, may have influenced the terms of the settlement by trading away possible advantages for the class in return for advantages for others." Fed. R. Civ. P. 23 Advisory Committee Notes. "The spirit of [Rule 23(e)(3)] is to compel identification of any agreement or understanding," written or oral, "that might have affected the interests of class members by altering what they may be receiving or foregoing." *Manual for Complex Litigation* (Fourth) § 21.631. In the instant matter, the agreements resolving the three Individual Cases – Hamel, Harris, and Brown – fall within this realm.

In each of these cases, the Individual Plaintiffs claimed that Defendants had misclassified them as exempt employees and failed to pay them overtime wages. Following the denial of Defendants' motions for summary judgment, the cases settled with Harris recovering $11,961.00 (1.5 times single damages), Brown $8,103.00 (1.5 times single damages), and Hamel $8,124.00 (single damages). The court finds that these settlement amounts are within the same damages range as the class action, in which individuals who fall within the Class definition and are entitled to participate in the settlement will receive 129% of their disputed wages. Moreover, the court will scrutinize the provision of $60,000.00 in attorneys' fees in each matter as part of its examination of the terms of the proposed award of attorney's fees.

*4.  The Proposed Settlement Treats Class Members Equitably*

The court preliminarily finds that the proposed settlement treats Settlement Class Members equitably.  Fed. R. Civ. P. 23(e)(2)(D).  The purpose of this requirement is to prevent the "inequitable treatment of some class members vis-a-vis others."  Fed. R. Civ. P. 23 Advisory Committee Notes.  "Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief."  *Id.*  Here, each Settlement Class Member's allocation is determined by the total number of regular and overtime hours he or she worked and what he or she was paid versus what he or she should have been paid for those hours.  Because this allocation of settlement dollars approximates the proportion of damages suffered by each person, the agreement treats the class members equitably.  *See Erguera v. CMG CIT Acquisition, LLC*, No. 1:20-cv-01744-JLT-CDB, 2022 WL 16804837, at *11 (E.D. Cal. Nov. 8, 2022) ("Because the Settlement provides for *pro rata* distribution to class members based upon the number of overtime hours worked, the agreement treats the class members equitably, and the proposed distribution plan supports preliminary approval.").

B.  <u>The Court Rejects Defendants' Request to Revisit Class Certification</u>

Defendants argue that the court should revisit class certification for a number of reasons, including: (1) the proposed class fails to satisfy the "numerosity" requirement under Fed. R. Civ. P. 23(a)(1) because the number of class members will be less than 40 once the J-1 interns, who received a form DS-7002, are removed, and the DS-7002 satisfied the Massachusetts notice requirement for paying the service rate; (2) there is no numerosity because there is no evidence that distributions were made from the tip pool to unqualified employees after December 17,

2017, and less than twenty Class members were hired before that date; (3) Mongue's employment began outside the statute of limitations period; (4) Defendants provided sufficient notice by posting the Massachusetts wage and hour poster; and (5) Mongue does not have standing because the evidence demonstrates that she received sufficient compensation to satisfy minimum wage requirements meaning that, even if she received insufficient notice, she cannot establish monetary or other cognizable harm beyond a mere statutory violation.  Regarding the first four arguments, Defendants waived them by agreeing to settle.  They could have pursued these defenses but instead chose to settle.  They are not entitled to litigate legal defenses they waived by agreeing to a settlement.  The fifth argument touches on this court's subject matter jurisdiction.  However, it, too, is unavailing, insofar as Class Counsel calculated that Mongue was injured and suffered damages of $7,023.43 (Dkt. No. 158-2).

C.  <u>Notice and Settlement Administration</u>

1.  *Appointment and Payment of the Settlement Administrator*

The court authorizes Plaintiff to select the Settlement Administrator, which shall be Optime Administration, LLC located in Brockton, MA, if available and able to provide claims administration services in this action.  The Settlement Administrator will be responsible for mailing notices and administering the notice and payment process, with the following responsibilities:  providing notice to Settlement Class Members; receiving and updating through normal and customary procedures (NCOA database) the Class List to be produced by Defendants, so that it is updated prior to the notices being mailed; printing and mailing the court-approved notices; performing necessary skip traces on notices and/or checks returned as undeliverable; reporting and paying all payroll taxes and withholdings in accordance with the terms of the parties' settlement; coordinating calculations of the payroll taxes and deductions

with Defendants to ensure that, to the extent such taxes and deductions are or could be deemed to

have been made by the Settlement Administrator on behalf of Defendants by governing taxing

authorities, they are made in compliance with Defendants' respective tax withholding and

remittance obligations for such payments; preparing and mailing of settlement checks to each of

the Settlement Class Members; preparing any appropriate tax forms required by any

governmental taxing authority or agency in connection with the settlement payments and

remitting those forms and any required payments to the appropriate governmental agencies;

performing all normal and customary duties associated with the administration of such

settlements; forwarding any mailed Settlement Class Member inquires to Class Counsel; and

verifying that payments have been distributed as required by this order.  Defendants shall be

solely responsible for paying the expenses associated with settlement administration.

   2.  *Notice to the Settlement Class Members*

   Within fourteen calendar days after entry of this order, Defendants will provide a "Class

List" to the Settlement Administrator in electronic form.  The Class List shall include the

following information about each Settlement Class Member:  the first and last name; the last

known home address and telephone number, if any, as reflected in Wheatleigh's personnel

records; Social Security number; and, if available, hire and termination dates of record with

Wheatleigh.  The court approves the draft settlement notice filed at Dkt. No. 166-1 as edited by

the court and attached hereto as Exhibit 1 (the "Class Notice") and orders the Settlement

Administrator to send the Class Notice to each Settlement Class Member by first-class mail at

their most recent address of record or such other address as is located by the Settlement

Administrator within ten calendar days of its receipt of the Class List.[6]  The Class Notice advises

---

[6] Defendants objected to Plaintiff's proposed notice of settlement (Dkt. No. 158-3) because it
failed to disclose the aggregate nature of the settlement, including the Individual Cases and Class

the Settlement Class Members of their rights under the proposed settlement agreement, including their right to be excluded from, comment upon, or object to the settlement agreement or any of its terms.  If a Class Notice is returned as undeliverable to the Settlement Administrator, and a forwarding address is provided by the U.S. Postal Service, then the Settlement Administrator shall re-mail the Class Notice to such forwarding address within ten calendar days of receipt.  If a Class Notice is returned as undeliverable to the Settlement Administrator and no forwarding address is available, the Settlement Administrator shall check for a more current address through a recognized database, such as Accurint, and if a more recent address is obtained through this method, re-mail the Class Notice to such address within ten calendar days of receipt.  The court finds that this notice plan constitutes the best notice practicable under the circumstances and complies fully with the requirements of Fed. R. Civ. P. 23 and due process.

3.  *Voluntary Exclusion of Potential Class Members from the Settlement Class*

Settlement Class Members who wish to exclude themselves from the settlement class must do so by submitting a request that:  (1) is in writing and signed by the Settlement Class Member; (2) includes the Settlement Class Member's name, address, e-mail address, and telephone number; (3) expressly states the Settlement Class Member's desire to be excluded from the settlement class for purposes of the proposed settlement; (4) is postmarked on or before the "Voluntary Exclusion Deadline" set forth below; and (5) is sent to the Settlement Administrator at the address provided in the Class Notice sent to Settlement Class Members. The Settlement Administrator shall promptly log each request for exclusion that it receives and provide copies of the log and each such request for exclusion to Defendants' Counsel and Class

---

Counsel's role and fee awards in those actions.  Defendants argued that this information is material and necessary for class members to consider before deciding whether to object to the proposed settlement.  The court agrees and has addressed this concern by approving Defendants' proposed notice as edited by the court, which includes this information.

Counsel within three business days of receipt.  No Settlement Class Member may affect an exclusion of a class of individuals or represent such a class.  Any Settlement Class Member who submits such a request shall not be bound by the parties' settlement agreement, shall receive no benefit from the settlement agreement, and shall not be bound by this court's orders or final judgment resolving the claims raised in this case.

D.   Final Approval Briefing Schedule and Fairness Hearing

1.   *Fairness Hearing*

A Fairness Hearing is hereby scheduled to be held before the undersigned on December 7, 2023, at 11:00 a.m., at the United States District Court for the District of Massachusetts, 300 State Street, Springfield, MA 01103, to consider the fairness, reasonableness, and adequacy of the settlement agreement, the entry of a Final Order in the case, and any petition for attorneys' fees, costs, and reimbursement of expenses made by Class Counsel and incentive award for Plaintiff as Class Representative.  The date and time of the Fairness Hearing shall be set forth in the Class Notice but shall be subject to continuance or adjournment by the court without further notice to the Settlement Class Members.  Any Settlement Class Member who has not opted out of the settlement may appear at the Fairness Hearing in person or through counsel and may be heard, to the extent allowed by this court, either in support or in opposition to the fairness, reasonableness, or adequacy of the settlement, to final judgment dismissing this action, or to the amount of any award of fees or costs to Class Counsel or any incentive award to Plaintiff as Class Representative; provided, however, that no person shall be heard in opposition to the settlement, and no papers or briefs submitted by or on behalf of any such person shall be accepted or considered by the court, unless such person timely submitted an objection that complied with the instructions in the Class Notice.

If final approval of the settlement is not granted, or if the settlement is terminated for any reason, the settlement and all proceedings had in connection therewith shall be without prejudice to the parties' rights and the parties shall return to the status quo ante, and all orders issued pursuant to the settlement and preliminary and final approval process shall be vacated.  In such event, the settlement agreement and all negotiations concerning it shall not be used or referred to in this action for any purpose whatsoever.

2.  *Voluntary Exclusion from the Class*

By October 26, 2023 (the "Voluntary Exclusion Deadline"), Settlement Class Members who wish to be excluded from the settlement class for purposes of the proposed settlement must send their written requests for exclusion to the Settlement Administrator as discussed above.  By not later than November 9, 2023, Class Counsel shall file with the court a complete list of all timely requests for exclusion received by the Settlement Administrator.

3.  *Attorneys' Fees and Incentive Award Briefing Schedule*

Class Counsel shall file a briefing in support of their petition for attorneys' fees and costs and the Class Representative's petition for an incentive award by not later October 19, 2023. Defendants shall have twenty-one days thereafter to file any optional responses to such petitions. If Defendants file any optional responses, Class Counsel shall have seven days thereafter to file any optional replies.

4.  *Briefing Regarding Final Approval*

The parties may file briefing regarding final approval of the proposed settlement agreement by not later than November 9, 2023.  For the Class Representative, this shall include the following documents to be prepared by Class Counsel:  (1) a motion for final approval; (2) a

25

proposed final approval order; (3) a final judgment; and (4) any other documents the court deems necessary to effectuate final settlement.

### 5.  Appearances by Class Members

Settlement Class Members who have not voluntarily excluded themselves from the settlement class will be represented by Class Counsel unless they elect to make an appearance in this action, either individually or through counsel of their choosing, at their own expense.  Any such appearance by Settlement Class Members who do not wish to be represented by Class Counsel shall be made by not later than November 22, 2023.

### 6.  Objections to Proposed Settlement

Settlement Class Members who have not voluntarily excluded themselves from the settlement class may object to the fairness, reasonableness, or adequacy of the proposed settlement agreement, to final judgment dismissing this action, or to the amount of any award of fees or costs to Class Counsel or any incentive award to Plaintiff as Class Representative.  Such objecting Settlement Class Members may offer their objections either on their own behalf or through counsel, at their own expense.

To be considered by the court, the court must receive such objection by not later than November 22, 2023.  Objections shall be mailed directly to the court at 300 State Street, Springfield, MA, 01103, with a copy sent to the Settlement Administrator at the address provided in the Class Notice sent to Settlement Class Members.  Any objection must be in writing, signed by the objecting Settlement Class Member, and include the following: the name, court, and docket number of this action; the full name, address, e-mail address, and telephone number of the Settlement Class Member filing the objection; a statement whether the objector intends to appear at the Final Approval Hearing, either in person or through counsel and, if

through counsel, identifying counsel by name, Board of Bar Overseers number, address, e-mail address, and phone number; a statement of the legal and factual bases for each and every objection, and, if through counsel, a legal memorandum in support of the objection; a description of any and all evidence the objector may offer at the Final Approval Hearing, if the objector intends to speak at the hearing; and proof of membership in the Settlement Class.  The Settlement Administrator shall provide copies of each objection to Defendants' Counsel and Class Counsel within three business days of receipt.

Any Settlement Class Member who fails to timely file such a written objection compliant in all respects with these procedures shall be deemed to have waived any objections.  Any objecting Settlement Class Member my withdraw his or her objection at any time.  The court retains final authority with respect to the consideration and admissibility of any such objections.

7. *Funding of Settlement*

If the court grants final approval of the settlement, Defendants shall transfer or cause to be transferred the amount of the Class Action Settlement Fund and Employer Taxes to the Settlement Administrator within ten calendar days after final judgment has entered in this action and all appeals have been exhausted.  Within ten calendar days after deposit of the amount of the Class Action Settlement Fund and Employer Taxes into the Settlement Account, the Settlement Administrator shall pay: (a) Class Member Settlement Payments to all Settlement Class Members, except that no Class Member Settlement Payment shall be paid or due to any Settlement Class Member who submits a request for exclusion from the Settlement Class; (b) any court-approved attorneys' fees, costs, and incentive award to Class Counsel; and (c) applicable taxes.

*8. Further Matters*

If the court grants final approval of the settlement, Defendants shall, within ten calendar days after final judgment has entered in this action:  (a) pay the amounts set forth in the settlement agreements regarding the Individual Actions; and (b) pay Class Counsel the attorneys' fees and expenses for the Individual Actions.

## IV.    CONCLUSION

For the above-stated reasons, Plaintiff's Motion for Preliminary Approval of Class Action Settlement (Dkt. No. 157) is GRANTED insofar as Plaintiff seeks an order preliminarily approving the settlement of this class action as reflected in the parties' December 22, 2021, and December 23, 2021, emails and enforced by this court.  The court directs Class Counsel to cause the Settlement Administrator to provide notice to all class members in accordance with the notice provisions outlined above.  The court will hold a fairness hearing at 11:00 a.m. on December 7, 2023.  In addition, the court has set deadlines for briefing and other matters leading up to the fairness hearing as discussed above.

It is so ordered.

Dated: August 23, 2023                    /s/ Katherine A. Robertson_____
                                          KATHERINE A. ROBERTSON
                                          United States Magistrate Judge