UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ARLETA MONGUE, ) | |
|       Plaintiff, ) | |
| ) | |
| ) | |
| v. ) | Civil No. 3:18-cv-30095-KAR |
| ) | |
| ) | |
| THE WHEATLEIGH CORPORATION, ) | |
| L. LINFIELD SIMON, SUSAN SIMON, ) | |
| and MARC WILHELM, ) | |
|       Defendants. ) | |

MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION FOR ATTORNEYS' FEES
AND EXPENSES AND SERVICE AWARD TO THE NAMED PLAINTIFF AND
PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
(Dkt Nos. 171 & 173)

ROBERTSON, U.S.M.J.

Plaintiff Arleta Mongue ("Plaintiff"), a former wait staff employee of the defendant The Wheatleigh Corporation ("Wheatleigh"), which was owned and/or operated by the remaining defendants L. Linfield Simon, Susan Simon, and Marc Wilhelm (collectively, "Defendants"), brings this class action alleging Massachusetts wage law violations on her own behalf and on behalf of other similarly situated wait staff employees. Plaintiff also asserted claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., but she did not move for certification of a collective action as to those claims. The parties have consented to this court's jurisdiction (Dkt. No. 14). See 28 U.S.C. § 636(c); Fed. R. Civ. P. 73. Presently before the court are two motions filed by Plaintiffs: Plaintiff's Motion for Attorneys' Fees and Expenses and Service Award to the Named Plaintiff (Dkt. No. 171) and Plaintiff's Motion for Final Approval

of Class Action Settlement (Dkt. No. 173).  For the reasons stated herein, the court ALLOWS both motions.

I.    **Relevant Procedural History and Facts**

On September 29, 2021, as amended by order dated October 12, 2021, this court granted Plaintiff's motion for certification of her state law claims as to a class consisting of  "all individuals who worked as wait staff employees, service employees, or service bartenders for Defendants from May 7, 2017, to March 1, 2020, and were paid a Service Rate" ("the Class"), and appointed Jeffrey S. Morneau of Connor & Morneau LLP as class counsel ("Class Counsel") (Dkt. Nos. 113, 117).  On December 23, 2021, the parties reached a global settlement agreement, consisting of a $550,000 global settlement fund ("GSF"), encompassing this case and three separate wage and hour cases filed by three other individuals – Mark Brown ("Brown"), Christian Perreault Hamel ("Hamel"), and Mary Harris ("Harris") (collectively, "the Individual Plaintiffs") – all of whom were also represented by Class Counsel against the same Defendants.[1]  By late April 2022, Defendants and Brown, Hamel, and Harris had entered into agreements to settle each of their cases for $8,103, $8,124, and $11,961, respectively, plus $60,000 in attorneys' fees each, for a total of $180,000 in fees.  Defendants attempted to renege on the settlement agreement with the Class, but this court granted a motion by Plaintiff to enforce it (Dkt. No. 155).

Subsequently, based on a schedule set by the court, Plaintiff filed a motion for preliminary approval of the class action settlement, which the court granted over Defendants' opposition (Dkt. Nos. 157, 163, 169).  Pursuant to the proposed settlement, the $341,812 of the

---

[1] Class Counsel filed a complaint on behalf of Brown, a former guest services manager, on April 11, 2018 (Case No. 3:18-cv-30056-KAR); Hamel, a former restaurant manager, on July 17, 2018 (Case No. 3:18-cv-30113-KAR); and Harris, a former housekeeping manager, on July 17, 2018 (Case No. 3:18-cv-30114-KAR) (referred to collectively as "the Individual Cases").

GSF remaining after settlement of the Individual Cases was to be allocated as follows: $243,918.80 to the Class for notice and tip pool violations, $92,893.20 in attorneys' fees and costs for the Class Action, and $5,000 to Plaintiff as a service award. In the preliminary approval order, which provisionally appointed Plaintiff as class representative, the court conducted an exacting analysis before concluding that it would likely be able to find that the proposed settlement is fair, reasonable, and adequate. The court did, however, express some reservation about the amount of the proposed attorneys' fee award. The court noted that, while $92,893.20 in attorneys' fees represents only 27.2% of the $341,812.00 going to settle the class claims – a figure which falls within the range of an appropriate percentage of the fund award ("POF") – when one considers the additional $180,000 in attorneys' fees Class Counsel would receive from the settlements with the Individual Plaintiffs, the total attorneys' fees would be $272,893.20, or 49.6% of the total $550,000 GSF. Thus, this court indicated that it would closely scrutinize any motion for attorneys' fees, which motion should include a lodestar analysis with appropriate accompanying documentation.

On September 6, 2023, in accordance with the court's preliminary approval order, the Settlement Administrator sent notices of the proposed settlement to forty-three members of the Class. The court finds that the notices complied with the requirements of Fed. R. Civ. P. 23 and due process and: (i) fully and accurately informed members of the Class about the lawsuit and the settlement; (ii) provided sufficient information so that members of the Class could decide whether to accept the benefits offered, opt-out and pursue their own remedies, or object to the settlement; (iii) provided procedures for members of the Class to submit written objections to the settlement, to Class Counsel's request for attorneys' fees, costs, and a service award to Plaintiff,

to appear at the fairness hearing, and to state objections to the settlement; and (iv) provided the time, date, and place of the fairness hearing.

On December 7, 2023, the court held a fairness hearing regarding Plaintiff's proposed class action settlement. Only four of the Class notices were undeliverable. No members of the Class opted out or objected to the proposed settlement.

## II. Discussion

### A. Motion for Final Approval of Class Action Settlement

Federal Rule of Civil Procedure 23(e) sets forth the requirements for approving a proposed class action settlement:

> [T]he court may approve [a settlement] only after a hearing and only on finding that it is fair, reasonable, and adequate considering whether:
>
> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account;
>
> (i) the costs, risk, and delay of trial and appeal;
>
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>
> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). In considering whether the relief provided is adequate, the court takes into account: the costs, risks, and delay of trial and appeal; the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; and the terms of any proposed award of attorney's fees, including timing of payment. Fed. R. Civ. P. 23(e)(2)(C)(i)-(iii). While the district court must carefully assess the proposed settlement, at the end of the day, "there is a presumption in its favor so long as parties engaged in arms-length negotiations after meaningful discovery." *In re: Ranbaxy Generic Drug Application Antitrust Litig.*, 630 F. Supp. 3d 241, 244-45 (D. Mass. 2022) (citing *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 259 (D.N.H. 2007)). *See also Wright v. S. N.H. Univ.*, 565 F. Supp. 3d 193, 206 (D.N.H. 2021) ("There is a presumption that a negotiated settlement is within the range of reasonableness '[w]hen sufficient discovery has been provided and the parties have bargained at arms-length.'" (quoting *City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996))).

Having considered Plaintiff's motion for final approval of the proposed settlement (Dkt. Nos. 172-173), as well as Defendants' opposition (Dkt. No. 178), and the statements made at the fairness hearing, the court now grants final approval of the proposed settlement. The court has not reviewed or heard any information that changes its view as set forth in the order granting preliminary approval that the proposed settlement is fair, reasonable, and adequate. "That the settlement is the result of arms-length negotiations weighs heavily in its favor, as does the quality of [C]lass [C]ounsel." *Ranbaxy*, 630 F. Supp. 3d at 245. Importantly, no Class Members opted out or objected to the settlement, which results in their obtaining sizeable monetary awards in excess of their single damages figures and avoids the risk of their receiving nothing following additional uncertain litigation. *See Roberts v. TJX Cos., Inc.*, Civil Action No. 13-cv- 13142-

ADB, 2016 WL 8677312, at *6 (D. Mass. Sept. 30, 2016) (approving final settlement where, out of 4018 class members, none objected to the settlement and three class members asked to be excluded from the settlement).

Defendants raise several arguments in opposition to final approval. First, Defendants argue that Plaintiff has not submitted any evidence that Class Counsel obtained informed consent for a global settlement of this class action and the Individual Cases as required by Mass. R. Prof. C. 1.8(g) ("Rule 1.8(g)"), which prohibits a lawyer who represents two or more clients from participating in making an aggregate settlement of the claims absent informed consent in a writing signed by each client. Defendants do not cite to any authority to support the argument that Plaintiff has the burden to prove that she and the Individual Plaintiffs provided informed consent. Moreover, Plaintiff has submitted affidavits from Plaintiff, Brown, Harris, and Hamel, all attesting to their awareness of the material terms of settlement and their approval of it before it was accepted (Dkt. No. 177-1, 177-2, 177-3, and 179). The court concludes that these affidavits, in which the named plaintiff in the class action and each of the plaintiffs in the Individual Cases attest in writing that they approved of the aggregate settlement, satisfy the requirement of Rule 1.8(g), and, thus, rejects Defendants' argument that the lack of evidence of informed consent prevents final approval of the settlement.

Second, Defendants claim that Plaintiff failed to identify all agreements made in connection with the settlement proposal as required by Fed. R. Civ. P. 23(e)(3), because Plaintiff failed to identify joint representation and co-counsel agreements involving Class Counsel and Michael A. Rivkin, an associate with the law firm Cohen Kinne Valicenti & Cook, for Plaintiff and each of the Individual Plaintiffs. Defendants have not pointed to any case holding that Class Counsel may not rely on the services of an attorney employed by a different firm to provide

6

representation to class members.  In the court's experience, Cohen Kinne Valicenti & Cook is a very reputable Berkshire County law firm that provides highly competent representation to its clients.  Rule 23(e)(3) requires parties seeking approval of a class action settlement to file a statement identifying any agreement made in connection with the proposal.  The agreements, which were drafted and signed in 2018 at the beginning of the litigation, were not "made in connection with the [settlement] proposal" in 2021.  Thus, Defendants have not shown that Plaintiff was obliged to identify them, and Defendants' argument is unavailing.

Third, Defendants maintain that the order certifying the class failed to identify which specific claims of Plaintiff's were being certified as required by Fed. R. Civ. P. 23(c)(1)(B).  As noted by the court in the order granting Plaintiff's motion for class certification and certifying the Class, Plaintiff sought class certification as to all her state law claims but did not seek certification of a collective action as to her FLSA claims (Dkt. No. 113 at 2).  The court's granting of the motion and certifying of the Class correspondingly included all of Plaintiff's state law claims, as evidenced by the court's discussion of the relevant state law in connection with its analysis of the suitability of the proposed class for certification.  However, even if the court's certification order were deficient on this point, "an order certifying a class and detailing the class composition and the case's issues and claims … can [be] amend[ed] before final judgment." *In re Pharmaceutical Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 39 (1st Cir. 2009).  *See also* Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants … class certification may be altered or amended before final judgment.").  In the court's view, Defendants waived the argument that the certification order was deficient by failing to raise it at the time of preliminary approval and then failing to file a proposed alternative by the deadline set by the court at the fairness hearing.  Nevertheless, the court alters or amends the certification order to clarify that the claims for which

7

the Class is certified include: (1) that Defendants violated Mass. Gen. Laws ch. 151, §§ 1 and 7 by paying the service rate to compensate Plaintiff and members of the Class when they should have received the full minimum wage due to Defendants' unlawful distribution of its tip pools, the un-tipped tasks to which Plaintiff and members of the Class were assigned, and Defendants' failure to provide proper written notice before utilizing the service rate (Count I); (2) that Defendants violated Mass. Gen. Laws ch. 149, § 152A by unlawfully distributing wages from the tip pool to non-wait staff employees and supervisors (Count III); and (3) that Defendants violated Mass. Gen. Laws ch. 149, §§ 148 and 150 by failing to timely pay wages to Plaintiff and members of the Class (Count IV).

Finally, Defendants posit that the court should not grant final approval to the settlement where it aggregates the claims of the Class and the Individual Plaintiffs, resulting in, what Defendants characterize as a disproportionate recovery of attorneys' fees. The argument, which the court addresses below in connection with Plaintiff's motion for attorneys' fees, is unavailing.

Thus, with the alteration or amendment to the certification order, and for the reasons set forth herein and in the court's order granting preliminary approval, as well as for the reasons stated by the court on the record at the fairness hearing, the court will allow Plaintiff's motion for final approval of the settlement.

B. Motion for Attorneys' Fees

"Under the 'common fund doctrine,' attorneys whose efforts lead to the creation of a fund for the benefit of the class are 'entitled to a reasonable attorney's fee from the fund as a whole.'" *In re Neurontin Mktg. & Sales Pracs. Litig.*, 58 F. Supp. 3d 167, 170 (D. Mass. 2014) (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)). The division of the common fund between class counsel and the members of the class, however, creates "a tension between

8

the interests of counsel in maximizing their compensation and the interests of members of the class in maximizing their recovery." *Arkansas Tchr. Ret. Sys. v. State St. Bank & Tr. Co.*, 512 F. Supp. 3d 196, 208 (D. Mass. 2020), *aff'd in part, appeal dismissed in part sub nom. Arkansas Tchr. Ret. Sys. v. State St. Corp.*, 25 F.4th 55 (1st Cir. 2022). Thus, the court must act as a fiduciary to protect the interests of the class. *Id*.

The court has discretion to calculate reasonable counsel fees as a percentage of the fund ("POF") or by utilizing a lodestar analysis. *Neurontin*, 58 F. Supp. 3d at 170. Under the POF method, the court "shapes the counsel fee based on what it determines is a reasonable percentage of the fund recovered for those benefitted by the litigation." *In re Thirteen Appeals Arising out of San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 305 (1st Cir. 1995) (citing *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991)). In contrast, "[a] court arrives at the lodestar by determining the number of hours productively spent on the litigation and multiplying those hours by reasonable hourly rates." *Id*. (citing *Blum v. Stenson*, 465 U.S. 886, 896-902 (1984); *Hensley*, 461 U.S. at 433; *Lipsett v. Blanco*, 975 F.2d 934, 937 (1st Cir. 1992)). The POF method is more commonly utilized in common fund situations, with the percentage frequently falling within the 20 to 30% range. *Arkansas Tchr. Ret. Sys.*, 512 F. Supp. 3d at 208. Factors courts consider in awarding attorneys' fees out of a common fund include: the size of the fund and number of persons benefitting from it; the skill, experience, and efficiency of class counsel; the complexity of the litigation and its duration; the risks involved with the litigation; the amount of time spent on the case by class counsel; awards in comparable cases; and public policy considerations. *Neurontin*, 58 F. Supp. 3d at 170.

Consideration of the pertinent factors supports the 27.2% POF sought here. The benefit obtained for the Class – 129% of single damages distributed to all but four members of a 43-

person class – is significant.  *See, e.g., Purinton v. Moody's Co-Worker Owned, Inc.*, No. 2:20-cv-00296-JAW, 2023 WL 167560, at *3 (D. Me. Jan. 12, 2023) (approving settlement representing 69% of the total claimed unpaid wages for the class).  No Class members have opted out or objected to the settlement.  Class Counsel has significant experience in handling class action litigation, including in wage and hour matters.  Class Counsel filed this case nearly 6 years ago and, in order to reach this point, had to identify the class claims and prevail on a motion for leave to file an amended complaint to add them, obtain certification of the Class, file a motion for summary judgment and an opposition to Defendants' cross-motion, seek court enforcement of a settlement that Defendants tried to avoid, and obtain preliminary approval – and now seek final approval – of the settlement over Defendants' continuing objections.  Class Counsel took the case on a contingent basis, assuming the risk of not getting paid at all.  The 27.2% POF sought falls within the range of percentages typically approved.  Finally, the lodestar calculation results in a figure significantly higher –$189,244.40 – than the $92,893.20 Class counsel is seeking.  *See Hill v. State Street Corp.*, Civil Action No. 09-12146-GAO, 2015 WL 127728, at *18 (D. Mass. Jan. 8, 2015) ("[T]he fact that counsel are seeking fees below the amount of class counsel's lodestar does support the reasonableness of the requested fee.").  Defendants complain that Plaintiff's lodestar calculation should be reduced by the amount of time spent by Rivkin, who was not appointed as class counsel and whose work on the case was not disclosed until Plaintiff filed the fee petition.  Defendants do not cite any authority to support their argument, but even if it were meritorious, the lodestar figure without including any time spent by Rivkin is $134,065.90, which still significantly exceeds the $92,893.20 Class Counsel is

seeking.[2]  This is the opposite of a case in which the lawyers will be overcompensated before they have invested significant time or resources.  *See Roberts*, 2016 Wl 8677312, at *9 (quoting *In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Fire Litig.*, 56 F.3d 295, 307 (1st Cir. 1995)).  Thus, 27.2% is a reasonable POF.

Nor does the $180,000 award of attorneys' fees in the Individual Cases change the court's view of the reasonableness of a $92,893.20 fee award in this case.  As set forth in the orders approving the settlements in those cases,[3] "[i]t is well settled that a reasonable amount of fees [in a fee-shifting situation] is determined pursuant to the 'lodestar approach,' which involves calculating 'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'"  *Marrotta v. Suffolk Cnty.*, 726 F. Supp. 2d 1, 4 (D. Mass. 2010) (quoting *Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 295 (1st Cir.2001)).  The lodestar in each of the Individual Cases exceeds the $60,000 fee award.  Moreover, while the fee awards in the Individual Cases are significantly higher than the recoveries of the Individual Plaintiffs, "[n]either the text nor the purpose of the FLSA … supports imposing a proportionality limit on recoverable attorneys' fees."  *Fisher v. SD Protection Inc.*, 948 F.3d 593, 603 (2d Cir. 2020).  Each of the Individual Plaintiffs recovered between 100-150% of their single damages, which represents a substantial recovery in line with the 129% recovery of the members of the

---

[2] Defendants have not disputed the reasonableness of the hourly rates sought by the Connor & Morneau attorneys, nor the reasonableness of the hours expended as reflected in the contemporaneous time records Plaintiff submitted.

[3] Court approval is necessary because "[t]he private settlement of FLSA claims requires the approval of either the Department of Labor or the district court."  *Singleton v. AT&T Mobility Servs., LLC*, 146 F. Supp 3d 258, 260 (D. Mass. 2015) (citing *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015); *Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Labor, Employment Standards Admin., Wage & Hour Div.*, 679 F.2d 1350, 1353 (11th Cir. 1982)).

Class.  Thus, the 27.2% POF in this case remains reasonable notwithstanding the recovery of fees in the Individual Cases.

Defendants also challenge the $5,000 service award to Plaintiff on the ground that Plaintiff lacks standing where she received sufficient compensation to satisfy minimum wage requirements and, thus, cannot establish monetary or other cognizable harm beyond a mere statutory violation for insufficient notice of the tip pool.  The court previously rejected this argument in granting preliminary approval to the settlement where Class Counsel calculated that Plaintiff was injured and suffered damages of $7,023.43 (Dkt. No. 169 at 21, citing Dkt. No. 158-2).  Further, the $5,000 service award would compensate Plaintiff for "bear[ing] the brunt of the litigation," without violating Fed. R. Civ. P. 23(e)(2)(D)'s requirement that the settlement treats class members equitably in relation to one another.  *Murray v. Grocery Delivery E-Services USA Inc.*, 55 F.4th 340, 353 (1st Cir. 2022) (rejecting challenge to awards between $2,000 and $10,000 apiece for the named plaintiffs, although vacating the district court's approval of the proposed settlement on other grounds).  Thus, the court approves the $5,000 service award to Plaintiff.

**III.   Order**

1. The Class includes all individuals who worked as wait staff employees, service employees, or service bartenders for Defendants from May 7, 2017, to March 1, 2020, and were paid a Service Rate.  The claims for which the Class is certified include: (1) that Defendants violated Mass. Gen. Laws ch. 151, §§ 1 and 7 by paying the service rate to compensate Plaintiff and members of the Class when they should have received the full minimum wage due to Defendants' unlawful distribution of its tip pools, the un-tipped tasks to which Plaintiff and members of the Class were assigned, and Defendants' failure

to provide proper written notice before utilizing the service rate (Count I); (2) that Defendants violated Mass. Gen. Laws ch. 149, § 152A by unlawfully distributing wages from the tip pool to non-wait staff employees and supervisors (Count III); and (3) that Defendants violated Mass. Gen. Laws ch. 149, §§ 148 and 150 by failing to timely pay wages to Plaintiff and members of the Class (Count IV)

2. This Order applies to all wage claims or causes of action certified for class action in this matter and binds all members of the Class.  Any member of the Class who negotiates a settlement check shall automatically be deemed to have fully and irrevocably released and forever discharged Defendants from any and all wage claims or causes of action certified in this matter.

3. Class Counsel is awarded $92,893.20 in attorneys' fees.

4. Plaintiff is awarded $5,000 as a service award.

5. Defendants shall transfer or cause to be transferred $341,812 in settlement funds plus the amount of employer taxes associated with the payments to be made to members of the Class as set forth herein, which Defendants are required to pay, to the Settlement Administrator within thirty calendar days of this Order.

6. Within ten calendar days after deposit of the settlement funds and employer taxes by Defendants, the Settlement Administrator shall pay settlement payments to all members of the Class.  Payments to members of the Class will be allocated with 50% reported as IRS Form 1099 payment of non-wages, such as for treble damages, liquidated damages, penalties, and interest, and 50% reported as IRS Form W2 payment of wages.  The Settlement Administrator will pay the applicable taxes within ten calendar days of receipt of the settlement funds and employer taxes from Defendants.

7. Within ten calendar days of receipt of the settlement funds and employer taxes from Defendants, the Settlement Administrator shall pay to Class Counsel $92,893.20 in court-approved attorneys' fees. The Settlement Administrator will prepare and have delivered to Class Counsel an IRS Form 1099 for the attorneys' fees awarded to Class Counsel.

8. Within ten calendar days of receipt of the settlement funds and employer taxes from Defendants, the Settlement Administrator shall pay Plaintiff's $5,000 service award. The Settlement Administrator will prepare and have delivered to Plaintiff an IRS Form 1099 for the $5,000 service award.

9. After the expiration of 60 days after mailing the payments to members of the Class, the Settlement Administrator will send a reminder postcard to any members of the Class whose checks have not yet been cashed, deposited, or otherwise negotiated, reminding them that they have 60 remaining days to cash, deposit, or otherwise negotiate their checks and inviting them to contact the Settlement Administrator to request that a replacement check be issued and mailed to them if necessary. If such a request is made by a member of the Class, then the Settlement Administrator shall cancel the outstanding settlement check that was initially sent and issue and send a replacement check to the requesting member of the Class. Any such replacement check will be valid for 60 days from being issued or 120 days from the date of the check that was initially sent to the member of the Class, whichever is later ("the Expiration Date").

10. In the event that any checks mailed to any members of the Class remain outstanding and not cashed, deposited, or otherwise negotiated upon the occurrence of the Expiration Date, or an envelope mailing a check or a reminder postcard mailed to a member of the Class is returned and no forwarding address can be located after reasonable efforts have

been made, then any such funds shall be transmitted by the Settlement Administrator in equal shares to the Hampden County Bar Foundation and Center for Social Justice.

11. The court orders Defendant to pay $5,750.25 to the Settlement Administrator for expenses associated with settlement administration within thirty calendar days of this Order and any additional settlement administration costs to the Settlement Administrator within ten calendar days of receiving an invoice for payment.

12. The court will retain jurisdiction over the parties to the Agreement and all members of the Class to administer, supervise, construe, and enforce the agreement in accordance with its terms.

It is so ordered.

Dated: April 16, 2024                            /s/ Katherine A. Robertson
                                                 KATHERINE A. ROBERTSON
                                                 United States Magistrate Judge